713 So.2d 962 (1997)
Susan K. BUSHNELL
v.
James J. BUSHNELL, Jr.
2960051.
Court of Civil Appeals of Alabama.
August 15, 1997.
As Modified on Overruling of Rehearing November 21, 1997.
Certiorari Denied April 17, 1998.
*963 David Cromwell Johnson of Johnson, Rosenthal, Liddon & Tuggle, Birmingham, for appellant.
Stephen R. Arnold and Linda G. Flippo of White, Dunn & Booker, Birmingham, for appellee.
Alabama Supreme Court 1970457.
CRAWLEY, Judge.
James J. Bushnell, Jr. (the "husband"), and Susan K. Bushnell (the "wife") were married in January 1983. They have two children. In February 1995, they separated. The wife sued for a divorce. After an extensive hearing, the trial court divorced the parties.
The trial court awarded custody of the minor children to the wife and ordered the husband to pay $1,338 per month in child support. In addition, the trial court ordered that the children remain enrolled in the Mountain Brook school system. The wife was awarded the use and possession of the marital residence, but she was required to pay all property taxes, to maintain insurance on the house, and to pay for any necessary repairs or other upkeep expenses. The house is to be sold and the profit from the sale divided equally upon the occurrence of one of five events: the wife's death; the wife's remarriage; the wife's cohabitation with a member of the opposite sex; the youngest child's graduation from high school; or the parties' agreement.
In dividing the parties' property, the trial court awarded the husband his IRA, worth approximately $5,600; his 401K account, worth approximately $30,000 or $37,000; and two Merrill Lynch accounts, totalling approximately $365,000. The wife was awarded her IRA, worth $2,400. The husband was required to pay $700 per month in alimony to the wife and to pay her a total of $80,000 as *964 alimony in gross, in yearly installments of $10,000. Each party was made responsible for his or her own debts incurred after the parties' separation.
The wife appeals. She argues that the property division is inequitable; that the requirement that she be responsible for debts incurred after the separation but before the pendente lite order is unfair; that the amount of child support is inconsistent with the guidelines of Rule 32, Ala. R. Jud. Admin., and the husband's ability to pay; and that the restriction requiring that the children remain in the Mountain Brook school system is improper. She specifically argues that the trial court erred in finding that the husband's Merrill Lynch accounts were the husband's separate property and were not subject to division. Although the trial court's order does not state that it so found, the husband concedes that the trial court must have found that those accounts were not marital property and were therefore not divisible.
The parties spent considerable time at trial arguing over the husband's Merrill Lynch accounts. The accounts, known as A-22 and T-34, are worth approximately $200,000 and $165,000, respectively. The wife attempted to establish that the accounts, although substantially funded by the husband's inheritances, were "used regularly for the common benefit of the parties during their marriage." Ala.Code 1975, § 30-2-51. The bulk of the testimony and the other evidence admitted at trial indicates that the account the wife alleges was used for the benefit of the family was A-22. Very little testimony concerned the use of the T-34 account. The husband vehemently opposed the wife's characterization, arguing that the A-22 account was used "sporadic[ally] and [for] specific purposes," that is, only a few times for isolated, "special" expenditures. In his brief, the husband argues that the term "regularly" as used in § 30-2-51 means that the husband's separate property must have been routinely relied upon as a source of funds for regular living expenses.
The husband outlined in his brief the testimony and other evidence concerning the use of the A-22 account. He indicated that in 1994 he transferred money six times to pay income taxes, twice to pay for the family vacation to Disney World, once to repay a loan, and once to purchase a new furnace for the marital residence. According to the husband, in 1993 he transferred money from the A-22 account to pay taxes, to pay an accountant, to make a mortgage payment on the marital residence, and to purchase a piano for the parties' daughter. In other years, transfers from the A-22 account were used to pay taxes, to make mortgage payments, to buy a vacuum cleaner, and to buy a van for the wife. These expenditures, according to the husband, are sporadic and cannot satisfy the burden of proving that the A-22 account was "used regularly for the common benefit of the parties during their marriage." See Ala.Code 1975, § 30-2-51. However, the evidence does not support his characterization of the use of the account as sporadic; the evidence indicates that the account was used frequently or periodically to satisfy the needs of the family.
Although the cases addressing whether a party's inheritance is a separate estate or is marital property have not defined the word "regularly" as it is used in § 30-2-51, see, e.g., Currie v. Currie, 550 So.2d 423 (Ala.Civ. App.1989), and Willmore v. Willmore, 489 So.2d 594 (Ala.Civ.App.1986), we conclude that the account need not be used daily or even weekly to be considered as "regularly" used for the family's benefit. Use of the account frequently or periodically, as is the case here, would be sufficient to make the account subject to division. The husband's own testimony and the records of the A-22 account and the joint account show that the husband periodically deposited funds into the joint account from the A-22 account and, according to him, used that money to pay the joint income taxes, to make the mortgage payment, and to purchase household items, such as the furnace. The husband's argument that the money was not used regularly for the benefit of his family is not persuasive, and we find that the A-22 account was used regularly for the benefit of the marriage and is therefore subject to division.
The trial court has wide discretion over alimony and the division of property, *965 and it may use whatever means are reasonable and necessary to equitably divide the parties' property. Grimsley v. Grimsley, 545 So.2d 75, 77 (Ala.Civ.App.1989). Its judgment is presumed correct and will not be reversed unless it is so unsupported by the evidence so as to be unjust and palpably wrong. Grimsley, 545 So.2d at 76. However, that judgment is subject to review and revision. Moody v. Moody, 641 So.2d 818, 820 (Ala.Civ.App.1994). This court must consider the issues of property division and alimony together when reviewing the decision of the trial court, Albertson v. Albertson, 678 So.2d 118, 120 (Ala.Civ.App.1996), and, because the facts and circumstances of each divorce case are different, this court must also consider the particular facts and circumstances of the case being reviewed. Murphy v. Murphy, 624 So.2d 620, 623 (Ala.Civ.App. 1993).
Although the wife's alimony awards, viewed in isolation, are not so low as to constitute an abuse of discretion, we cannot view these items separately. See Albertson, 678 So.2d at 120; Murphy, 624 So.2d at 623. Instead, we view the entire property division and all other provisions of the divorce judgment together to determine whether the division of property is equitable. The wife will receive $700 per month in alimony. She is entitled to $10,000 annually for eight years. She also has the use of the marital residence.
However, she will be living in Mountain Brook, and her children will be attending Mountain Brook schools. She must also maintain the house, paying for all necessary repairs, all taxes, and all insurance herself, even though the husband will receive half of the profits from its eventual sale. Viewing the divorce judgment in its entirety, we conclude that these other aspects of that judgment render the property division inequitable, given the extent of the husband's separate estate.
In conclusion, we agree with the wife that the husband's Merrill Lynch account known as A-22 is indeed marital property and is subject to division. We do not find that the other Merrill Lynch account, T-34, is marital property in light of the lack of evidence concerning the use of that account. We must hold that the division of property is inequitable in light of the considerations outlined above; therefore, we reverse the judgment insofar as it relates to the property division and remand with instructions for the trial court to include the A-22 account as marital property when it redivides the parties' assets.
The wife's second argument is that the trial court erred in allocating the debts of the parties. She argues that she should not be saddled with the debt she accumulated after the separation but before the trial court ordered support pendente lite. However, allocation of the parties' debt is within the sound discretion of the trial court, and its allocation will not be disturbed on appeal unless an abuse of that discretion is shown. Owens v. Owens, 656 So.2d 842, 844 (Ala.Civ. App.1995). The wife has not shown that the trial court abused its discretion, so we affirm as to the trial court's allocation of debt.
The wife also argues that the trial court erred in requiring that the children remain enrolled in the Mountain Brook school system. Her argument centers on the fact that the trial court's order indicates that she agreed to this restriction; as she argues and the record reflects, she did not. The parties did agree that the school system in Mountain Brook is excellent. We recognize that, generally, restrictions on the residence of the children have been upheld by this court when they are in the best interest of those children. McDaniel v. McDaniel, 621 So.2d 1328 (Ala.Civ.App.1993). However, the trial court did not make a finding that the children's best interest would be served by the restriction imposed in this case. Instead, the judgment reflects that the trial court acquiesced in what he considered to be the parties' agreement about what was in the best interest of their children. Because the parties were not in agreement, we cannot affirm the trial court's imposition of a restriction based upon a mistaken impression that the parties had such an agreement. Therefore, we reverse the portion of the trial court's judgment that requires that the children remain enrolled in the Mountain Brook *966 school system and remand with instructions that the trial court reconsider whether, based upon the evidence presented at trial, this restriction is in the best interest of the children.
We also agree with the mother's contention that the child support award in this case must be reversed. The child support form was filled out by the court, and it lists the husband's income as $7,428 per month. This figure is apparently based on only the husband's employment income. The husband's salary is approximately $84,000 annually. In March 1996, he received a $13,000 bonus. According to the parties' joint tax return for 1994 (no 1995 tax return for the husband appears in the record), the husband's income included nearly $10,000 in interest and dividend income and nearly $90,000 in capital gains income. This income must be included in the computation of the husband's monthly income for purposes of child support. Rule 32(B)(2)(a), Ala. R. Jud. Admin. In addition, our reversal of the property division in this case may have a bearing on the husband's income. The trial court is instructed to recalculate child support based on the husband's gross income from both employment and other sources, as defined in Rule 32(B)(2)(a), and to consider the effect, if any, of its redistribution of the marital assets on the husband's income.
In summary, we hold that the division of property in this case is inequitable and that the award of child support was incorrectly calculated. Accordingly, we reverse and remand those portions of the judgment. We also reverse and remand the restriction requiring that the children remain enrolled in the Mountain Brook school system. The trial court's allocation of debt is affirmed.
The wife's request for an attorney fee on appeal is granted in the amount of $2,500.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
MONROE and THOMPSON, JJ., concur.
ROBERTSON, P.J., and YATES, J., concur specially.
YATES, Judge, concurring specially.
I concur specially to note that I am concerned with the restriction by the trial court mandating that the children remain in a particular school system. For a trial court to order a change in custody in the event a custodial parent is unable to continue to reside in a particular neighborhood is, in my opinion, too restrictive and sets a precedent that could be abused.
ROBERTSON, P.J., concurs.

On Application for Rehearing
PER CURIAM.
APPLICATION OVERRULED; RULE 39(k) MOTION DENIED; OPINION MODIFIED.
ROBERTSON, P.J., and YATES and MONROE, JJ., concur.
CRAWLEY and THOMPSON, JJ., dissent (with opinion by CRAWLEY, J.).
CRAWLEY, Judge, dissenting.
I respectfully dissent from the majority's decision to overrule the application for rehearing in this case. The husband argues that this court should not have reversed the requirement that the children remain enrolled in the Mountain Brook school system. He contends that we should presume that the trial court found the requirement to be in the best interests of the children and that the evidence supports such a determination. I agree. The record supports a finding that the restriction that the children remain enrolled in the Mountain Brook school system is in their best interests at this time. I would modify the portion of the opinion concerning the school restriction to read:
"The wife also argues that the trial court erred in requiring that the children remain enrolled in the Mountain Brook school system. We recognize that, generally, restrictions on the residence of the children have been upheld by this court when they are in the best interest of those children." McDaniel v. McDaniel, 621 So.2d 1328, 1330 (Ala.Civ.App.1993). "There is no wider area for the exercise of judicial discretion than that of providing for and protecting *967 the best interests of children. The court stands in parens patria of children. Its power is without limit so long as it serves the best interests of the children." McDaniel, 621 So.2d at 1330 (citations omitted).
"As the husband argues, the evidence presented to the trial court supports a finding that the restriction is in the best interests of the children. The children have grown up in Mountain Brook, and the parties agreed that the school system in Mountain Brook was excellent. The husband testified that he had rented an apartment only one and a half blocks from the marital residence to be close to the children for visitation and that he often looked after the children in the evening. He also testified that the wife interfered with his attempts to speak with the children by telephone, but that she never interfered when he picked up the children for visitation. We cannot say that the restriction does not serve the best interests of the children. In fact, the evidence indicates that the children will benefit from close contact with the father and from remaining in the environment in which they have spent their young lives. Therefore, we cannot hold the trial court in error for imposing the restriction."
"We wish to point out that, if, at some future time, the restriction is no longer in the best interests of the children, it is subject to be changed on a petition for modification. McDaniel, 621 So.2d at 1330. In fact, this court has recognized that a restriction such as the one in this case is `conclusive of the child's best interest only as long as the status of the parties at the time remains unchanged.' Wheeler v. Wheeler, 585 So.2d 51, 52 (Ala.Civ.App. 1991); Means v. Means, 512 So.2d 1386, 1389 (Ala.Civ.App.1987)."
In light of the father's testimony that the mother interfered with his attempts at telephone communication with the children but did not interfere with his visitation with the children after school, the trial court could have found that requiring the mother to keep the children enrolled in Mountain Brook schools would ensure that the children were able to maintain a relationship with their father. In addition, the trial court's restriction is modifiable in the event the circumstances change. I would grant rehearing to affirm the trial court's imposition of the school restriction.
THOMPSON, J., concurs.