James Wood LaMoreaux and Linda Lightfoot LaMoreaux were divorced by the Tuscaloosa County Circuit Court. The husband appealed the judgment of the trial court to the Court of Civil Appeals, where he argued, among other contentions, that the trial court had erred in the division of the parties' marital property by considering stock gifted to the husband by his family and not used regularly for the common benefit of the couple during their marriage, § 30-2-51(a), Ala. Code 1975.
Without opinion, the Court of Civil Appeals affirmed the judgment of the trial court. LaMoreaux v. LaMoreaux, 845 So.2d 800 (Ala.Civ.App. 2000). The husband petitioned this Court for certiorari review, which we granted. In his petition, the husband asserts that the no-opinion affirmance by the Court of Civil Appeals conflicts with its decision inDurbin v. Durbin, 818 So.2d 396 (Ala. 2000), rev'd on other grounds, Exparte Durbin, 818 So.2d 404 (Ala. 2001). We reverse the judgment of the Court of Civil Appeals affirming the property division in the judgment of the trial court, and we remand this cause for further proceedings.
The husband sued for a divorce and for custody of the parties' two minor daughters. The wife answered and counterclaimed for a divorce on the ground of adultery and for custody of the minor daughters. After a bench trial on oral testimony and documentary evidence, the trial court entered a judgment of divorce and awarded the wife, amidst other relief, custody the parties' minor daughters, periodic alimony, and child support. The trial court divided the parties' real property:
 "1. As noted above in the Findings of Fact, the Husband's property located at 1926 Queen City Avenue is not a marital asset and is not subject to a property division under Section 30-2-51, [Ala. Code 1975], as amended, as there was no evidence that this property (which was owned by the Husband prior to the marriage), or the income produced by the property, was used regularly for the common benefit of the parties during the marriage. . . .
 "2. The Wife is vested with all right, title and interest in and to the following property, and the Husband is divested of any interest in said property: *Page 803 
 "(a) 1/2 interest in 1305 Indian Hills Drive, Tuscaloosa [total equity $ 130,000]
"(b) 2601 7th Street, Tuscaloosa [equity of $130,000]
 "(c) 2720 8th Street, Tuscaloosa [value between $20,000 and $30,000]
"(d) 2600 8th Street, Tuscaloosa [equity of $57,519]
 "(e) 1/2 interest in North River Yacht Club lot [total appraised value of $75,000]
 "The combined equity of these properties is approximately $382,000.00, or 58 percent of the marital property. The reasonable monthly income for the properties in (b), (c) and (d) above is $2,000.00 — $2,200.00.
 "3. The Husband is vested with all right, title and interest in and to the following property, and the Wife is divested of any interest in said property:
"(a) 1/2 interest in 1305 Indian Hills Drive
"(b) 37 Audubon Place, Tuscaloosa [equity of $60,000]
 "(c) 1209 1211 Bridge Avenue, Tuscaloosa [value of $88,000]
"(d) 246 The Highlands, Tuscaloosa [$ 0 equity]
"(e) 1/2 interest in North River Yacht Club lot
 "The combined equity of these properties is approximately $281,000, or approximately 42 per cent of the marital property.
 "The division of marital property takes into account, among other factors, the Husband's extramarital relationships which were a primary contributing cause of the breakdown of the parties' marriage.
 "4. The marital residence located at 1305 Indian Hills Drive and the lots located on Windward Avenue [North River Yacht Club lot] shall be immediately sold and the net proceeds divided equally between the parties after payment of the debts which exist at the date of sale contained in Exhibit #1 attached hereto.
". . . .
 "6. As an additional part of the overall property settlement, and/or as alimony in gross, the Husband shall pay to the Wife the sum of $68,000, payable as follows: $25,000.00 on November 1, 1999; $23,000.00 on November 1, 2000; and $20,000 on November 1, 2001. This additional property settlement takes into consideration the overall property division between the parties, the Wife's claim to a portion of the value of the Husband's stock in PELA [P.E. LaMoreaux and Associates] acquired after the marriage, and the Wife's claim to a portion of the Husband's stock accounts. Consideration is also given to the fact that most of the stock accounts were given to the Husband by the Husband's family and were not regularly used for the common benefit of the parties during the marriage." (Emphasis original in part and added in part.)
The trial court awarded the husband all of his 118 shares of the P.E. LaMoreaux and Associates ("PELA") stock now at issue, but ordered him to pay $20,000 to the wife's attorneys as their fee.
Both the husband and the wife moved to alter, to amend, or to vacate the judgment. Following a hearing on the parties' motions, the trial court entered an amended judgment:
 "The Court finds that the division of assets in the original Judgment did not sufficiently take into consideration the Husband's misconduct. This amended order takes into account an additional emphasis on this misconduct. Also, this amended Judgment takes into account an additional finding that the *Page 804 Husband's stock is worth somewhat more than the Court's previous valuation."
The trial court awarded the wife the marital residence and the North River Yacht Club lot, both previously ordered sold and the net proceeds divided between the parties, and ordered the husband to pay one-half of the wife's previously incurred medical expenses, an additional $25,000 to the wife's attorneys, an additional $32,000 in alimony in gross, and an additional $500 per month in periodic alimony. The husband appealed, and the Court of Civil Appeals affirmed without opinion. LaMoreaux, supra.
The husband testified that, during their 17-year marriage, he and the wife had maintained separate bank accounts; that the wife did not have access to any of his bank accounts or to any of his stock accounts; that he had a Merrill Lynch checking account from which he paid the household expenses; and that he deposited his salary into the Merrill Lynch account. When the wife's attorney asked the husband whether there were "[a]ny other monies coming into this account from any other sources," the husband replied, "Not that I know of."
The husband testified that his family had gifted him about 118 shares of stock in the family-owned corporation, PELA; that he received about one-half of the shares before the marriage and the remaining shares during the marriage; that, in the years when the corporation made a profit, the corporation paid dividends to the stockholders; and that he had received PELA stock dividends in the nine years before the trial. He did not testify what he had done with the PELA stock dividends. While the husband and the wife each called an expert to testify about the value of the husband's PELA stock, the experts did not offer any testimony about the husband's disposition of his PELA stock dividends. Nor did the wife, or any other witness, testify about the husband's disposition of his PELA stock dividends.
The husband argues that, because his PELA stock or dividends were not regularly used for the parties' common benefit during the marriage, the trial court erred in considering the value of his PELA stock in dividing the marital property, and that, therefore, the Court of Civil Appeals erred in affirming the judgment of the trial court.
 "The standard appellate courts apply in reviewing a trial court's judgment awarding alimony and dividing property is well established:
 "`A trial court's determination as to alimony and the division of property following an ore tenus presentation of the evidence is presumed correct. Parrish v. Parrish, 617 So.2d 1036 (Ala.Civ.App. 1993). Moreover, issues of alimony and property division must be considered together, and the trial court's judgment will not be disturbed absent a finding that it is unsupported by the evidence so as to amount to an abuse of discretion. Id.'
 Morgan v. Morgan, 686 So.2d 308, 310 (Ala.Civ.App. 1996). More recently, the Court of Civil Appeals has stated:
 "`The trial court has wide discretion over alimony and the division of property, and it may use whatever means are reasonable and necessary to equitably divide the parties' property. Grimsley v. Grimsley, 545 So.2d 75, 77 (Ala.Civ.App. 1989). Its judgment is presumed correct and will not be reversed unless it is so unsupported by the evidence . . . as to be unjust and palpably wrong. Grimsley, 545 So.2d at 76. However, that judgment is subject to review and revision. Moody v. Moody, 641 So.2d 818, 820 (Ala.Civ.App. 1994). This court must consider the issues of property *Page 805 
division and alimony together when reviewing the decision of the trial court, Albertson v. Albertson, 678 So.2d 118, 120 (Ala.Civ.App. 1996), and, because the facts and circumstances of each divorce are different, this court must also consider the particular facts and circumstances of the case being reviewed. Murphy v. Murphy, 624 So.2d 620, 623
(Ala.Civ.App. 1993).'
 "Bushnell v. Bushnell, 713 So.2d 962, 964-65 (Ala.Civ.App. 1997)."
Ex parte Drummond, 785 So.2d 358, 360-61 (Ala. 2000). See also Ex parteDurbin, 818 So.2d at 401.
Section 30-2-51(a), Ala. Code 1975, provides:
 "If either spouse has no separate estate or if it is insufficient for the maintenance of a spouse, the judge, upon granting a divorce, at his or her discretion, may order to a spouse an allowance out of the estate of the other spouse, taking into consideration the value thereof and the condition of the spouse's family. Notwithstanding the foregoing, the judge may not take into consideration any property acquired prior to the marriage of the parties or by inheritance or gift unless the judge finds from the evidence that the property, or income produced by the property, has been used regularly for the common benefit of the parties during their marriage." (Emphasis added).
This statute does not differentiate between gifts acquired before the marriage and gifts acquired during the marriage. The time of acquisition affects only "property" acquired otherwise than by "inheritance or gift."See Goodson v. Goodson, 588 So.2d 481 (Ala.Civ.App. 1991); Mangina v.Mangina, 585 So.2d 1383 (Ala.Civ.App. 1991); Prestwood v. Prestwood,523 So.2d 1071 (Ala.Civ.App. 1988); Burns v. Burns, 473 So.2d 1085
(Ala.Civ.App. 1985).
That the inheritance or gift property at issue in Durbin v. Durbin,supra, was acquired before the marriage was not critical to that decision. That portion of Durbin v. Durbin, addressing the treatment of inheritance or gift property turns on the provision of this statute conditioning the inclusion of inheritance or gift property in the marital estate on the regular use of that property or its income for the common benefit of the parties during the marriage. Only that portion of Durbinv. Durbin addressing the treatment of property not acquired by inheritance or gift cites the acquisition of the property during the marriage as the statutory basis for including the property in the marital estate. Durbin v. Durbin, 818 So.2d at 402.
Addressing the treatment of the inheritance or gift property, theDurbin v. Durbin court states:
 "It is undisputed that all of the husband's stock in [Marshall Durbin Food Corporation (`MDFC')] was acquired by inheritance or gift prior to the marriage and that it was not used for the common benefit of the parties during the marriage.
". . . .
 ". . . [T]he stock in the corporation — rather than the corporation itself — is the husband's property. The husband's MDFC stock should not have been considered in the division of marital property because it is the husband's separate estate. The trial court could have found from the evidence that the husband drew a salary from MDFC and received other `perks' as additional compensation — not as a consequence of his owning stock in MDFC, but of his being employed by the corporation as its chief executive officer.
". . . .
 "Section 30-2-51(a) states a single circumstance that, if found by the trial *Page 806 court, authorizes the court to treat nonmarital property as marital property, namely: when the `property, or income produced by the property, has been used regularly for the common benefit of the parties during their marriage.' The trial court implicitly found that the § 30-2-51(a) circumstance was not present with respect to the husband's MDFC stock, and that finding is fully supported by the record."
Durbin v. Durbin, 818 So.2d at 400-01 (emphasis added), rev'd on othergrounds, 818 So.2d 404.
In this case, the record is devoid of evidence that the husband's gifted PELA stock or his PELA stock dividends were "used regularly for the common benefit of the parties during their marriage," §30-2-51(a). Therefore, the trial court erred in considering the value of the husband's PELA stock in dividing the marital property. Consequently, the division of martial property is so unsupported by the evidence as to be unjust and palpably wrong. Ex parte Drummond, supra. See also Ex parteDurbin, supra. Accordingly, we reverse the judgment of the Court of Civil Appeals insofar as it affirmed that aspect of the judgment of trial court dividing the marital property, and we remand this cause for further proceedings.
REVERSED AND REMANDED.
Moore, C.J., and See, Lyons, Brown, and Woodall, JJ., concur.
Stuart, J., concurs in the result.
Harwood, J., recuses himself.