Rosalynde Johnson Hull ("the wife") and Vernon Johnson Hull ("the husband") were married in 1980. This was a second marriage for both parties and, although both had children from prior marriages, they had no children of their own. In November 2001, the wife sought a divorce. After a trial, the trial court entered a judgment dividing the parties' real and personal property. After her postjudgment motion was denied without a hearing, the wife appealed from that judgment, arguing that the division of the parties' real property *Page 906 
was inequitable, that the trial court erred by failing to award her periodic alimony, and that the trial court erred by failing to grant her a hearing on her postjudgment motion. We affirm the judgment in part, reverse the judgment in part, and remand the cause.
A trial court has wide discretion over alimony and the division of property, and it may use whatever means are reasonable and necessary to equitably divide the parties' property. Grimsley v.Grimsley, 545 So.2d 75, 77 (Ala.Civ.App. 1989). A trial court's judgment is presumed correct and will not be reversed unless it is so unsupported by the evidence so as to be unjust and palpably wrong. Grimsley, 545 So.2d at 76. However, a trial court's judgment is subject to review and revision. Moody v. Moody,641 So.2d 818, 820 (Ala.Civ.App. 1994). This court must consider the issues of property division and alimony together when reviewing the decision of a trial court, Albertson v. Albertson,678 So.2d 118, 120 (Ala.Civ.App. 1996), and, because the facts and circumstances of each divorce case are different, this court must also consider the particular facts and circumstances of the case being reviewed. Murphy v. Murphy, 624 So.2d 620, 623
(Ala.Civ.App. 1993).
The husband, who was 73 years old at the time of trial, is a retired electrical engineer who operated his own consulting business for 11 of the 12 years preceding the divorce trial and who has worked in the cellular-telephone industry. He has not held a job since November 2001. The wife, who was 59 years old at the time of trial, works for the Baldwin County Board of Education in the Child Nutrition Department. She has worked in that position for 12 years; her annual salary at the time of trial was $34,500.
The husband had only one individual retirement account ("IRA") at the time of trial; it contained $13,000. He testified that he had used the money in the account to pay bills since the parties had separated. The wife had two retirement accounts. One contained $1,500, and the other, her state retirement account, contained $14,731 at the time of trial. The wife also had several financial accounts solely in her name. An Oppenheimer Global Account, a Sun America IRA, and a VKM American Capital 403(b) account were all conceded by the wife to be marital property. The total aggregate amount of money in those accounts as of the date of trial was $41,276. The wife also had $2,455 in an American Funds ICA account, which had been funded by stocks she inherited before the marriage. During the marriage, the wife inherited $95,000 from her father's estate and $13,000 from her mother's estate. Those inheritances were used to fund an AIM mutual-fund account, which contained $17,403 at the time of trial, and a Bank One of Texas account, which contained $24,000 at the time of trial. The trial court did not include the wife's American Funds ICA account funded by her premarital stock inheritance in its division of property, presumably because it concluded that the account was the wife's separate property that had not been used for the common benefit of the marriage and was therefore not subject to division under Ala. Code 1975, § 30-2-51(a). However, the trial court did consider the AIM mutual-fund account and the Bank One of Texas account as marital property, indicating that the wife had used the accounts for the common benefit of the marriage. The trial court awarded the wife both of her retirement accounts, the Oppenheimer Global Account, the Sun America IRA, the VKM American Capital 403(b) account, and the Bank One of Texas account; it awarded the husband his IRA. *Page 907 
The parties purchased a house situated on 25 acres in Loxley, Alabama, in 1988 for $128,000. This house became the marital residence. The husband paid the $40,000 down payment on the house with funds he received from a sale of his former business. The note evidenced by a mortgage on the house has been satisfied. Both parties' names appear on the deed. The wife spent approximately $10,000 of her inheritance on a remodeling of home's kitchen. The parties also spent an additional $39,000 on other improvements to the property.
The husband purchased two other parcels of real estate during the marriage; both are deeded solely in his name. The first parcel is a 15.7-acre parcel of farmland, which was purchased in 1989 for $28,000. The husband paid the $10,000 down payment on that parcel as well. Although the original mortgage on that parcel was paid off, the husband mortgaged the property again to pay off the mortgage on the marital residence; at the time of trial, the 15.7-acre parcel was encumbered by a $67,000 mortgage. The trial court found in its judgment that the 15.7-acre parcel was worth $71,682. The 15.7-acre parcel was at one time used in the parties' blueberry farming operation. The husband added $38,500 in improvements to facilitate its use for blueberry farming. However, by the time of trial, the husband was no longer using the 15.7-acre parcel for blueberry farming.
The other parcel purchased during the marriage was a 67-acre parcel, part of which is used for the parties' blueberry farming operation. The husband purchased the 67-acre parcel in 1991 for $70,000; he paid the down payment of $15,000. The husband made $54,000 in improvements to this parcel. The trial court valued this parcel at $266,000. The 67-acre parcel, like the marital residence, is unencumbered. However, the husband has a few debts associated with the 67-acre parcel — a $5,000 production loan on his blueberry crop and a $2,400 loan for materials to construct a barn on the property.
The parties owned an extensive amount of furniture, a large part of which was in a storage facility. The parties also owned a vast array of farming equipment and tools. The husband opined that, in total, the furniture was worth between $40,000 and $50,000. The wife opined that the tools and farming equipment were worth over $50,000. Each agreed that the wife would be awarded the bulk of the furniture and the husband would receive all of the tools and farming equipment except for a "survival package" the wife requested and the husband agreed to assemble.
The trial court awarded the husband the marital residence and ordered that, unless one of the parties chose to buy the other out, the two other parcels of real estate should be sold and any profit realized divided equally between the parties. In addition, in regard to the possibility that the 15.7-acre parcel would sell for less than the mortgage payoff amount, the trial court ordered that the parties would be equally liable for any amount due to the mortgage company after the sale.
The wife appeals the trial court's judgment, arguing that the trial court's division of property in this case was inequitable. She first argues that the trial court erred by considering the AIM mutual-fund account and the Bank One of Texas account in the division of marital property because, she alleges, those accounts were not regularly used for the common benefit of the marriage.See Ala. Code 1975, § 30-2-51(a). She also argues that the award of the marital residence to the husband is inequitable in light of the small award of *Page 908 
other marital property and financial accounts made to her.
Section 30-2-51(a) reads:
 "If either spouse has no separate estate or if it is insufficient for the maintenance of a spouse, the judge, upon granting a divorce, at his or her discretion, may order to a spouse an allowance out of the estate of the other spouse, taking into consideration the value thereof and the condition of the spouse's family. Notwithstanding the foregoing, the judge may not take into consideration any property acquired prior to the marriage of the parties or by inheritance or gift unless the judge finds from the evidence that property, or income produced by the property, has been used regularly for the common benefit of the parties during their marriage."
In Bushnell v. Bushnell, 713 So.2d 962, 964 (Ala.Civ.App. 1997), this court considered what extent of use was necessary for a gift or inheritance property to be considered to be "used regularly for the common benefit of the parties during their marriage." The husband in Bushnell had placed inherited moneys into two different investment accounts. Bushnell, 713 So.2d at 964. Funds from one of those accounts, referred to as the "A-22 account," had been used throughout the marriage to pay the parties' mortgage payment on occasion; to pay taxes on the parties' real property; to pay income taxes on six occasions in 1994 and on other occasions in 1993; to purchase a furnace for the marital residence; to purchase a van for the wife; to purchase a piano for the daughter; and to purchase a vacuum cleaner. Id. Those uses were documented in the account history the wife presented as evidence at trial. Id. The wife argued that those numerous expenditures amounted to the account's having been used regularly for the common benefit of the parties during the marriage. Id. The husband argued that "regularly" as used in § 30-2-51(a) meant "routinely relied upon as a source of funds for regular living expenses" and that his uses of the funds from the A-22 account were "sporadic" and for specific purposes.Id.
We determined in Bushnell that the word "regularly" as used in § 30-2-51(a) did not necessarily require daily or even weekly use of the gift or inheritance property or the income produced therefrom for the common benefit of the parties. Id. Instead, we concluded that frequent or periodic use of the gift or inheritance property to satisfy the needs of the family was sufficient to amount to regular use under the statute. Id.
Thus, in Bushnell, we concluded that funds from the investment account had been used regularly for the common benefit of the parties during the marriage. Id.
The present case, however, does not reveal frequent or periodic uses of the wife's inheritance funds for the common benefit of the parties during the marriage. The testimony indicates that the wife used $10,000 of the inheritance funds to remodel the kitchen while the parties undertook to remodel the marital residence as a result of hurricane damage. The record in this case does not include, as it did in Bushnell, the wife's bank records reflecting periodic transfers of her funds into the parties' joint account or checks written by the wife from her separate accounts to pay for the parties' household or other expenses. The evidence shows only a one time use of the wife's inherited funds. By its very nature, a one time use cannot be considered "regular," which is defined as "recurring . . . at fixed, uniform, or normal intervals." Merriam-Webster's CollegiateDictionary 1048 (11th ed. 2003). Therefore, we conclude that the Bank One of Texas account and the wife's AIM mutual-fund account were not used for the common benefit of the parties during the marriage. *Page 909 
Because the Bank One of Texas account and AIM mutual-fund account were not used for the common benefit of the parties during the marriage, the trial court was precluded by §30-2-51(a) from considering those accounts at all in dividing the parties' marital property. Ex parte LaMoreaux, 845 So.2d 801,806 (Ala. 2002). Our supreme court, in Ex parte LaMoreaux, applied § 30-2-51(a) to determine whether stock that had been given to the husband as a gift and dividends on that stock, neither of which the parties agreed had been used for the common benefit of the parties during their marriage, should have been considered when the trial court divided the parties marital property. Ex parte LaMoreaux, 845 So.2d at 805. The trial court, although noting in its judgment that the stock and stock dividends were not used for the parties' common benefit during the marriage, stated that it had considered the stocks and stock dividends in fashioning the division of the parties' other property and in awarding the wife alimony in gross to offset the husband's separate estate. Id. at 803. The supreme court reversed this court's affirmance of the trial court's division of property, stating:
 "In this case, the record is devoid of evidence that the husband's gifted . . . stock or his . . . stock dividends were `used regularly for the common benefit of the parties during their marriage,' § 30-2-51(a). Therefore, the trial court erred in considering the value of the husband's . . . stock in dividing the marital property. Consequently, the division of marital property is so unsupported by the evidence as to be unjust and palpably wrong."
Id. at 806.
In this case, the trial court awarded the wife all the financial accounts of the parties except the husband's $13,000 IRA. The total value of those accounts at the time of trial was $98,910. The husband was awarded the marital residence, which, although not valued by the trial court, was valued by the husband at $250,000 and valued by the wife at $350,000. The other parcels of real property owned by the parties were ordered to be sold and any equity in those parcels was to be divided equally; in addition, the award of most of the parties' furniture to the wife and the award of most of the parties' farm equipment and tools to the husband and the division of the parties' vehicles were nearly equal awards. However, when the Bank One of Texas account and the AIM mutual-fund account are removed from the equation, the wife was awarded a total of $57,507 in the remaining marital assets, while the husband was awarded his $13,000 IRA and the marital home, which, according to the husband, is valued at more than four times the financial accounts awarded to the wife. As the supreme court concluded in Ex parte LaMoreaux, as a consequence of the trial court's improper inclusion of the wife's inheritance accounts as marital property, the property division in this case is so unsupported by the evidence as to be plainly and palpably wrong.
The wife's other argument is that the trial court erred when it failed to award her periodic alimony. The husband was not employed at the time of trial; his income, which consisted of Social Security benefits and retirement benefits, was $1,211 per month. In contrast, the wife was employed full-time, earning an annual salary of $34,500, or $2,875 per month. Although the wife correctly identifies one purpose of periodic alimony — "to . . . enable [a] spouse, to the extent possible, to maintain the status that the parties had enjoyed during the marriage, until that spouse is self-supporting or maintaining a lifestyle or status similar to the one enjoyed during the marriage," O'Neal v.O'Neal, 678 So.2d 161, 164 (Ala.Civ.App. *Page 910 
1996) — the economic situation of the parties in the present case demonstrates the limitations imposed by the phrase "to the extent possible" in the quotation from O'Neal. The husband has very little income from which to pay the wife periodic alimony. We are reversing the property division because the trial court considered the wife's separate property in fashioning that property division. Although the property division and alimony are interrelated and should be considered together, see Albertson, 678 So.2d at 120, the trial court's failure to award periodic alimony in this case appears justified and is not impacted by our reversal of the property division. Therefore, because the husband has very little current income with which to pay alimony and because the wife has income of her own with which to support herself, we affirm the trial court's decision not to award the wife periodic alimony at the present time.
The wife's final argument is that the trial court erred by failing to hold a hearing on her postjudgment motion. Because we have determined that the trial court erred in considering the wife's separate inheritance accounts in fashioning its property division and because we reverse the trial court's judgment on that basis, we pretermit discussion of the wife's remaining issue. Langham v. Langham, 753 So.2d 527, 530 (Ala.Civ.App. 1999) (pretermitting consideration of the issue whether the denial of a postjudgment motion without a hearing was error in light of the resolution of the other issues on appeal).
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and THOMPSON, PITTMAN, and MURDOCK, JJ., concur.