MOORE, Judge.
Connie F. Littlepage III (“the husband”) appeals from a judgment entered by the Baldwin Circuit Court (“the trial court”) divorcing him from Virginia 0. Littlepage (“the wife”) to the extent that that judgment awarded the wife periodic alimony, awarded the wife “family support arrear-ages,” and divided the marital property. The wife cross-appeals from the divorce judgment insofar as the trial court awarded the husband one-half of the wife’s retirement accounts and failed to award her attorney’s fees. With regard to the appeal, we affirm the trial court’s judgment in part, reverse the judgment in part, and remand the case for further proceedings. With regard to the cross-appeal, we affirm the judgment in part, reverse the judgment in part, and remand the case for further proceedings.

Procedural History

On August 8, 2011, the wife filed a complaint seeking a divorce from the husband. On September 28, 2011, the trial court entered a pendente lite order, based on the agreement of the parties, providing, among other things, that the wife would have pendente lite custody of the parties’ two children and that “[t]he Status Quo shall remain in full force and effect as to payment of all bills and expenses of the marriage.” In response to various motions, the trial court entered a subsequent pen-dente lite order on October 1, 2013, providing, in pertinent part:
“1. [The wife] is to have sole authority to lease and collect proceeds from the Spanish Fort, Alabama property referred to as the trailer and the two Butler Alabama rental properties. [The wife] is to pay for the debts, repairs, monthly obligations and bills on these properties at this time.
“2. [The husband] is to be given notice of the identity of the individual or individuals that are to be tenants in these properties.
“3. [The husband] will pay to [the wife] the sum of $2,500.00 a month beginning September, 2013.
“4. [The husband] is to pay $5,600.00 to [the wife], prior to the date of trial on the merits, toward any back support ... that the Court may, at trial, determine[ ] due. This amount is not a final calculation of back support owed, if any. A final determination on back support due, if any, shall be made at trial of this matter.”
After a trial, the trial court entered a judgment on April 16, 2015, that, among other things, divorced the parties, ordered the husband to pay “$74,550.00 as family support arrearages through February 2015,” found that “all properties/accounts are indeed marital property and subject to division” and divided those properties and accounts, and ordered the husband to pay $1,000 a month in periodic alimony. On May 15, 2015, the husband and the wife filed separate postjudgment motions. On July 13, 2015, the trial court amended the judgment with regard to certain issues not related to this appeal. On August 19, 2015, the husband filed his notice of appeal. On September 2, 2015, the wife cross-appealed.

Standard of Review

“ ‘In a case in which the evidence is presented to the trial court ore tenus, such as this one, the findings of the trial court are presumed correct and will not be set aside unless they are plainly and palpably wrong or unjust.’ Tibbs v. Anderson, 580 So.2d 1337, 1339 (Ala.1991). ‘Furthermore, where the trial court does not make findings of fact, it *931 will be assumed that the trial court made those findings that were necessary to support its judgment, unless the findings would be clearly erroneous.’ Ex parte Walters, 580 So.2d 1352, 1354 (Ala.1991).”
Brown v. Brown, 26 So.3d 1210, 1213-14 (Ala.Civ.App.2007).

Discussion

On appeal, the husband argues that the trial court erred in determining that certain properties were marital property, in awarding the wife periodic alimony, and in awarding the wife “family support arrear-ages.” On cross-appeal, the wife argues that the trial court erred in determining that certain of her financial accounts were marital property, in dividing those accounts between the parties, and by not awarding her attorney’s fees.
I. Determination of and Division of , Marital Property and Award of Periodic Alimony
Section 30-2-51, Ala.Code 1975, provides:
“(a) If either spouse has no separate estate or if it is insufficient for the maintenance of a spouse, the judge, upon granting a divorce, at his or her discretion, may order to a spouse an allowance out of the estate of the other spouse, taking into consideration the value thereof and the condition of the spouse’s family. Notwithstanding the foregoing, the judge may not take into consideration any property acquired prior to the marriage of the parties or by inheritance or gift unless the judge finds from the evidence that the property, or income produced by the property, has been used regularly for the common benefit of the parties during their marriage.
“(b) The judge, at his or her discretion, may include in the estate of either spouse the present value of any future or current retirement benefits, that a spouse may have a vested interest in or may be receiving on the date the action for divorce is filed, provided that the following conditions are met:
“(1) The parties have been married for a period of 10 years during which the retirement was being accumulated.
“(2) The court shall not include in the estate the value of any retirement benefits, acquired prior to the marriage including any interest or appreciation of the benefits.
“(3) The total amount of the retirement benefits payable to the non-covered spouse shall not exceed 50 percent of the retirement benefits that may be considered by the court.”
A. Mellen Creek, LLP, and Littlepage Properties, LLP
The undisputed evidence presented at the' trial indicates that, during the marriage, the husband’s father had gifted to the husband and the husband’s sister a partnership interest in Mellen Creek, LLP, and Littlepage Properties, LLP. Once it has been demonstrated that property was acquired by gift or inheritance, pursuant to § 30-2-51(a), in "order to make a division of that property, the trial court must find from the evidence that the" property was used" regularly for the common benefit of the parties during the marriage. See Shirley v. Shirley, 600 So.2d 284 (Ala.Civ.App.1992).
In the present case, the record contains no evidence indicating that Mellen Creek, which owns a subdivision referred to as “Sterling Hills,” had produced any income for the husband or that the husband had put his partnership interest in Mellen Creek to some use that had benefited the parties during the marriage. Thus, the trial court erred to the extent that it determined that the husband’s part *932 nership interest in Mellen Creek was marital property.
With regard to the husband’s interest in Littlepage Properties, the evidence indicates that Littlepage Properties owns several properties that are used as rental property. The wife testified that she, as a real-estate agent, had assisted Littlepage Properties by procuring tenants for those rental properties and that she had done so without taking a fee for her services. She testified further that Littlepage Properties had received most of the proceeds generated from renting those properties but that, “[o]ccasionally,” during the parties’ 15-year marriage, she and the husband would receive money from the rental of those properties.
This court has held that “frequent or periodic use of the gift or inheritance property to satisfy the needs of the family [is] sufficient to amount to regular use under [§ 30-2-51(a), Ala.Code 1975].” Hull v. Hull, 887 So.2d 904, 908 (Ala.Civ.App.2003). In Hull, this court discussed the case of Bushnell v. Bushnell, 713 So.2d 962, 964 (Ala.Civ.App.1997), noting that this court had determined that certain inherited funds had been used “frequently” or “periodically” “to satisfy the needs of the family” and that that was “sufficient to amount to regular use under [30-2-51(a) ].” Hull, 887 So.2d at 908. This court noted that, in Bushnell, the evidence had indicated that the funds
“had been used throughout the marriage to pay the parties’ mortgage payment on occasion; to pay taxes on the parties’ real property; to pay income taxes on six occasions in 1994 and on other occasions in 1993; to purchase a furnace for the marital residence; to purchase a van for the wife; to purchase a piano for the daughter; and to purchase a vacuum cleaner.”
Id. The court further noted that the use of the funds was “documented in the account history the wife presented as evidence at trial.” Id. In addressing the evidence presented in Hull, this court stated that
“the wife used $10,000 of the inheritance funds to remodel the kitchen while the parties undertook to remodel the marital residence as a result of hurricane damage [but that] [t]he record in this case does not include, as it did in Bushnell, the wife’s bank records reflecting periodic transfers of her funds into the parties’ .joint account or checks written by the wife from her separate accounts to pay for the parties’ household or other expenses.”
Id. This court determined that the onetime use of the inherited funds was insufficient to show that they had been regularly used for the common benefit of the parties during the marriage. Id.
In the present case, the evidence indicating that rent checks had been made out to the husband and the wife clearly does not rise to the level of the extensive evidence set forth in Bushnell concerning the regular use of the inherited funds for the common benefit of the parties during the marriage. There is no evidence indicating the frequency at which the husband and the wife received those rental proceeds. Moreover, the record contains no evidence indicating what was done with those checks once the husband and the wife received them—whether the parties deposited the checks into a joint account to be used for the common benefit of the parties or whether the checks were perhaps endorsed and deposited back into the Littlepage Properties account. Unlike in Bushnell, where there was evidence of periodic transfers originating from the inherited funds and evidence that those funds had been used specifically for the common benefit of the parties during the marriage, in the present case the evidence merely indicates that on “occasion” the husband *933 and the wife received rental proceeds from Littlepage Properties’ rental property. We conclude that the evidence in this case was insufficient to show that the rental income from Littlepage Properties had been used regularly, frequently, or periodically for the common benefit of the parties during the marriage.[1]
The wife also testified that Little-page Properties had given the husband’s construction company, CFL Construction, LLC, capital, mostly in the form of lumber and materials, and that the parties had benefited from the income the husband had earned through CFL Construction. However, the wife did not specify when those contributions had been made, i.e., before or after the husband gained his interest in Littlepage Properties. In fact, her testimony implies that the gifts from Littlepage Properties to CFL Construction were made at a time when the husband’s father controlled Littlepage Properties.[2] The wife also did not testify as to the frequency of those gifts. Therefore, we conclude that the trial court did not have sufficient evidence to classify Little-page Properties as marital property.
For the foregoing reasons, we reverse the judgment insofar as it treated the husband’s interests in Mellen Creek and Lit-tlepage Properties as marital property subject to equitable division.
B. The Wife’s “Vanguard” Investment Account and Individual-Retirement Account
In her cross-appeal, the wife argues that the trial court erred in including her “Vanguard” investment account and her individual-retirement account in the marital estate and in dividing them equally between the parties.
The wife testified that she had had the Vanguard account before she married the husband and that, during the marriage, she had not contributed to, nor withdrawn any funds from, that account. Additionally, the husband did not present any evidence indicating that funds from that account had been used regularly for the common benefit of the parties during the marriage. See 30-2-51(a). Thus, the trial court erred in determining the wife’s Vanguard investment account to be marital property subject to division.
With regard to her individual-retirement account, the wife testified that she had had that account before the parties married in 1999, but that she had made additional contributions to the account during the marriage, although she did not testify regarding the amount of those contributions. She specifically testified that she did not know the balance of the account at the time of the parties’ marriage. The husband also did not attempt to prove the amount of the contributions made to the wife’s individual-retirement account during *934 the marriage or the interest that had accrued on those contributions during the marriage.
“In cases in which the spouse seeking the award of benefits has not proven the amount of retirement benefits accrued during the marriage, we have held that that failure of proof prevents a trial court from exercising its discretion to award retirement benefits under the statute.” Ford v. Ford, 3 So.3d 872, 874 (Ala.Civ.App.2008); see also Smith v. Smith, 964 So.2d 663, 669 (Ala.Civ.App.2005) (holding that the trial court had erred in dividing retirement accounts when, among other things, the wife had “presented no evidence of the interest or appreciation on the premarriage benefits that accrued after the date of the parties’ marriage”). Because the husband failed to present evidence indicating the amount of the wife’s contributions to her individual-retirement account during the marriage, we conclude that the trial court erred in determining that account to be marital property subject to division.
Based on the foregoing, we reverse the judgment insofar as it treated the wife’s Vanguard and individual-retirement accounts as marital property subject to equitable division.
In light of our holding that the trial court erred in determining the husband’s interests in Mellen Creek and Littlepage Properties, as well as the wife’s Vanguard and individual retirement accounts, to be marital property, we also reverse the trial court’s judgment with regard to its division of the remainder of the marital property and its award of periodic alimony to the wife. See Redden v. Redden, 44 So.3d 508, 513 (Ala.Civ.App.2009) (“[BJecause property-division and alimony awards are considered to be interrelated, we often reverse both aspects of the trial court’s judgment so that [the trial court] may consider the entire award again upon remand.”). We remand the cause for the trial court to reconsider its division of the marital property and its award of periodic alimony in compliance with this opinion.
II. Failure to Award Attorney’s Fees
The wife also argues in her cross-appeal that the trial court erred by not awarding her attorney’s fees.
“‘Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If they do not, the arguments are waived.’ White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008); see also Bishop v. Robinson, 516 So.2d 723, 724 (Ala.Civ.App.1987) (quoting Thoman Eng’g, Inc. v. McDonald, 57 Ala.App. 287, 290, 328 So.2d 293, 294 (Civ.App.1976)) (noting that an appellant should ‘present his issues “with clarity and without ambiguity”’ and ‘fully express his position on the enumerated issues’ in the argument section of his brief); accord United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990) (‘It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel’s work, create the ossature for the argument, and put flesh on its bones.’).”
Hudson v. Hudson, 178 So.3d 861, 865 (Ala.Civ.App.2014).
In the present case, the wife has failed to meet the requirements of Rule 28(a)(10) with regard to the trial court’s failure to award her attorney’s fees. The wife merely mentions the issue in her brief to this court, and she fails to cite relevant legal authorities and to develop an argument applying the law to the facts on this issue. Therefore, we consider this argument waived. Hudson, 178 So.3d at 865.
*935 III. Family-Support Arrearages
In his appeal, the husband also argues that the trial court erred in determining his “family support” arrearages.
A.
The husband specifically argues that, from “October 1, 2013, through the [date of the final hearing in this matter] in February 2015, the Husband’s family-support obligation [totaled only] $48,000[3] ($2,500 per month for 17 months plus the $5,600 in arrearage).” According to the husband, he “paid a total of $51,374 directly to or on behalf of the Wife through October 2014 as ‘family support’ expenses.” We note, however, that the husband testified that, in calculating the amount of family support that he was claiming he had paid, he had included amounts that he had not paid directly to the wife. Specifically, he testified that the following payments constituted family support: paying off the parties’ home-equity line-of-credit account, paying bills associated with one of the parties’ rental houses, paying the balance owed on a credit card for charges that had been made by the wife, paying the health-insurance premium for the wife and the parties’ two children, and spending $7,000 renovating one of the parties’ rental properties. The husband also contends that he should be given credit against his family-support arrearages for bills that he paid that the wife was obligated to pay, such as the bills for the rental properties.
In the present case, the trial court’s October 1, 2013, order directed the husband to “pay to [the wife] the sum of $2,500.00 a month beginning September, 2013.”
“Courts are to construe judgments as they construe written contracts, apply-tag the same rules of construction they apply to written contracts. Whether a judgment is ambiguous is a question of law to be determined by the court. If the terms of a judgment are not ambiguous, then they must be given their usual and ordinary meaning and their ‘legal effect must be declared in the light of the literal meaning of the language used’ in the judgment.”
State Pers. Bd. v. Akers, 797 So.2d 422, 424 (Ala.2000) (quoting Wise v. Watson, 286 Ala. 22, 27, 236 So.2d 681, 686 (1970)) (citations omitted). We conclude that the October 1, 2013, order unambiguously required the husband to pay $2,500 directly to the wife; it does not allow for the husband to unilaterally offset his support obligation for payments that he made and that he contends the wife should have made. Indeed, the trial court made it clear that the husband was obligated to pay the $2,500 monthly support obligation regardless of whether the wife paid the bills that she was obligated to pay, and it stated specifically that it would settle any failure to pay certain bills when it balanced “the equities” in the final judgment. Therefore, we find the husband’s argument that the payments he claimed he had made on behalf of the wife should be considered as satisfying his family-support obligation to be without merit.
B.
The husband also specifically argues that the trial court determined in its October 1, 2013, order that his arrearage up to that point was only $5,600, and, he asserts, he paid that amount plus the amount he was ordered to pay thereafter up until the trial. We note, however, that the trial court stated that the $5,600 *936 amount was “not a final calculation of back support owed” and that “[a] final determination on back support due, if any, shall be made at trial of this matter.” We conclude that the trial court’s order unambiguously provided that the $5,600 arrearage amount was subject to change pending the presentation of evidence at the trial. Akers, 797 So.2d at 424. Therefore, the husband’s position that the trial court was limited to a $5,600 arrearage amount for the period before October 13, 2013, is without merit.
C.
Finally, the husband contends that he had no obligation to pay any amount to the wife before the entry of the October 1, 2013, order despite the existence of the status quo order. Although the status quo order, which was entered by agreement of the parties on September 28, 2011, did not provide a specific amount that the husband was to pay to the wife each month, “[w]hen the intent of the parties to an agreement in a divorce case is uncertain, the trial court determines the intent ‘by reading the agreement in light of the surrounding circumstances and the situation of the parties at the time of execution.’ ” Drescher v. Drescher, 621 So.2d 304, 306 (Ala.Civ.App.1993) (quoting Oliver v. Oliver, 504 So.2d 308, 309 (Ala.Civ.App.1987)). In the present case, the wife testified that the husband had paid her $3,000 per month in September, October, and November 2011. Based on those circumstances, we conclude that the husband clearly understood at the time of executing the status quo agreement that paying $3,000 per month in support would maintain the status quo. Drescher, 621 So.2d at 306.
The wife testified at the trial that, during the marriage, the primary source of income for the family was the husband’s employment income from CFL Construction, that she had also worked part-time as a real-estate agent, that the parties had various rental properties from which she collected rent, and that the parties also had a home-equity line-of-credit account that she was able to use for day-to-day cash shortfalls. The wife testified that, after the status quo order was entered in September 2011, the husband had paid her $3,000 per month from September through November 2011, that he had paid her $1,500 in December 2011 and January 2012, that he had paid her $500 in February 2012, and that he had paid her $200 in May 2012. She also testified that the husband had not paid any support between May 2012 and September 2013. The wife also testified that the husband had interfered with her ability to rent the parties’ rental properties and that he had closed the home-equity line-of-credit account. Based on those facts, the trial court could have clearly found that the husband had failed to maintain the status quo by failing to support the wife and the children with his income as he had done during the marriage. Moreover, the evidence indicates that the husband had actively prevented the wife from accessing other funds that had been used during the marriage to support the family. We also note that the wife testified that the husband’s family-support arrearages amounted to at least $80,000.
Considering the above-mentioned evidence, we have calculated the husband’s arrearage amount to be $75,300, which is an amount slightly greater than the $74,550 determined by the trial court.[4] *937 Therefore, we conclude that the trial court did not exceed its discretion in determining the amount of the husband’s family-support arrearages.

Conclusion

Based on the foregoing, we reverse the trial court’s judgment to the extent that it determined the husband’s interests in Mel-len Creek and Littlepage Properties, as well as the wife’s Vanguard investment account and her individual-retirement account, to be marital property, and we remand the cause for the trial court to reconsider the division of the marital property and its award of periodic alimony to the wife in light of this opinion. The judgment is affirmed with regard to the trial court’s determination of the husband’s family-support arrearages and its denial of attorney’s fees to the wife.
APPEAL—AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
CROSS-APPEAL—AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.

. "Occasionally” is defined as "on occasion: NOW AND THEN.” Merriam-Webster’s Collegiate Dictionary 858 (11th ed.2003). "Frequently” is defined as "at frequent or short intervals.” Id. at 500. "Periodically” is defined as "at regular intervals of time” or "from time to time.” Id. at 921. "Regularly” is defined as "on a regular basis: at regular intervals.” Id. at 1049.

. The questioning was as follows:
"Q. Did [the husband’s father] give [the husband] some money for capital for CFL, LLC?
"A Yes.
"Q Okay. Are you familiar with any particular amounts of sums that he gave for [the husband] to use as capital for CFL, LLC?
"A. No. It was mostly in the form of lumber and materials.
"Q Did—was [the husband] able to get materials to use to help work?
"A. Yes.”

. We note that $2,500 x 17 = $48,000; $42,500 + $5,600 totals $48,100, not $48,000.

. The wife testified that, after the status quo order was entered in September 2011, the husband paid her $3,000 per month in September, October, and November 2011. She testified that the husband had paid her $1,500 in December 2011 and January 2012 ($1,500 shortfall per month x 2 months = $3,000 shortfall); $500 in February 2012 ($2,500 shortfall); and $200 in May 2012 ($2,800 shortfall). She also testified that the husband had not paid any support in March and April *937 2012 ($3,000 shortfall per month x 2 months = $6,000 shortfall) or between June 2012 and August 2013 ($3,000 shortfall per month x 15 months = $45,000 shortfall). The wife testified further that the husband had paid her a total of only $4,000 during the months of January 2014 through August 2014, leaving a $16,000 shortfall for that period ($2,500 per month x 8 months = $20,000 - $4,000 = $16,000).