PER CURIAM.
J.F. (“the mother”) appeals from the trial court’s award of visitation to D.C.W. (“the father”) in excess of the amount of visitation that the parties had agreed to in a settlement agreement that the trial court had incorporated into its judgment.
On August 21, 2002, the father filed a petition for visitation pursuant to the Alabama Uniform Parentage Act, § 26-17-1 et seq., Ala.Code 1975. In his petition, the father alleged that he was .the biological father of M.H., a child born out of wedlock, and that the child had been living with the mother since his birth in August 1992. The mother filed an answer, admitting that the father was the biological father of the child and that the father had legitimated the child through a 1993 proceeding in the probate court. In addition to her answer, the mother counterclaimed, seeking an award of child support pursuant to Rule 32, Ala. R. Jud. Admin. According to the mother, the father had made only sporadic child-support payments in the past and the amount paid was not in accordance with Rule 32. The mother admitted in her answer that the father had visited the child in the past but that problems had arisen between the child and the father’s wife during visitation.
The trial court ordered the parties to participate in the “Both Parents Visitation Mediation Program.” Following a mediation session, the parties successfully reached an agreement; a report that contained the “Parenting Plan Agreement” signed by both the father and the mother was submitted to the trial court. The trial court subsequently held a hearing at which the agreement was read into the record:
*578 “THE COURT: It appears that this Court did issue a pretrial order and the parents were referred to the Both Parents Visitation Mediation Program at the Family Services Center. It does appear that the parties did participate in that program and did negotiate up to a certain point. The negotiated settlement was forwarded to the Court along with a letter from — I cannot pronounce Sibyl’s last name, Beaulieu, who was the eounselor/negotiator/mediator assigned to the parents and they were unable to negotiate to the point of extended visitation and that matter appears to have been resolved by the parties here today. Although there was a motion to set aside the settlement agreement and a request for formal mediation filed by Ms. Coats, on behalf [of the mother], this Court in effect denied that motion off the record since the Father — I stated to the parties here that this Court would not grant that unless the Father was in agreement to go forward with some type of formal ‘paid for’ mediation. The Both Parents Program is a grant, free mediation program and the Court does not require or direct parties from this Court to participate in a paid-for mediation unless the parties are in agreement to do so and the Father declined to do that. Nonetheless, the parties have had an opportunity to discuss these matters and have arrived at their own settlement here today. Who can recite that settlement for the Court?
“[COUNSEL FOR FATHER]: I will, Your Honor.
“THE COURT: All right.
“[COUNSEL FOR FATHER]: The parties have agreed to make the following alterations and modifications to the plan that was worked out by Both Parents and also to address the issues that were unresolved. The changes are as follows: The child support will be modified to reflect $294 a month in child support. The mother will carry the primary health insurance premium. Both parties will continue to carry — or will carry the child on health insurance. They will split all noncovered medical bills. The extended visitation will be for cumulative four weeks during the year. This would include Fall, Spring and Summer break time. The Father shall give the Mother 60 days notice of the weeks that he intends to take during the year. The transportation will be accomplished by [the father] although the Mother will agree to cooperate any time that she might have the ability to do so with transportation. The Father will give the Mother the first right of refusal for any period of time longer than two hours when he cannot be the primary care provider for the child. In the event that the stepmother is the one that’s going to be caring for the child for an extended period, [the father] will definitely give [the mother] the opportunity to care for the child. [The father] will not take the child to any industrial site, that’s his job, during his period of caring for the child. [The father] also will agree to cooperate in scheduling social and extracurricular activities for the minor child and will be reasonable in his— both parties will be reasonable in their attempts to work around those kinds of things. And I believe that’s all. Ms. Coats may have — I’ve given her a copy of my notes, but they’re kind of disjointed, Judge, so^—
“[COUNSEL FOR MOTHER]: Judge, I believe, additionally we agreed that the Christmas schedule that’s in the parenting plan be modified such that the Father has Christmas Eve up till 10:00 p.m. and he would return the child to the Mother by 10:00 p.m. and that she would have the child every Christmas Day. The Father celebrates Hanukkah and so his family celebrates on Christ *579 mas Eve and they celebrate some New Year’s and the Mother has a very large family here in Madison County. She celebrates on Christmas Day and that is modified and, also, the child support reflected $294 per month. The paperwork that reflects that is already in the file and that is pursuant to Rule 32.
“THE COURT: Okay. So there is no deviation from Rule 32?
“[COUNSEL FOR MOTHER]: No, ma’am. That is a change from the Parenting Plan wherein they did deviate (inaudible).
“THE COURT: Okay. Who is prepared to—
“[COUNSEL FOR FATHER]: I’ll do that, Judge.
“THE COURT: I’ll give you 14 days, if you would, to go ahead and, if you will — I don’t know how it would work out. If it is easier to use the Parenting Plan as a guide and just type up a new Parenting Plan for the parties to refer to or if drawing up a new settlement agreement itself — whatever is easier-—
“[COUNSEL FOR FATHER]: All right.
“THE COURT: — to just get new paperwork done—
“[COUNSEL FOR FATHER]: Yes, ma’am.
“THE COURT: — is fine with the Court. If the visitation agreement itself can just be adjusted and signed off on by the parties so that they can refer to it, wonderful, and you just submit a new one of those to the Court and the child-support paperwork with a new order that the Court — well, there’s not an order that I have signed as of yet — that’s fine, with the adjustments made. And that may be the easiest course to take and then I’ll just — the old one will be retained in the file, just because it was submitted but not used, it’ll be retained and we’ll just use the new one. That may be the easiest course to take.
“[COUNSEL FOR FATHER]: Your Honor, is it okay if Ms. Coats and I just sign off on it? My client lives out of state. Or since we put it on the record.
“THE COURT: I don’t see any problem with that so long as he’s in agreement. Perhaps a faxed copy?
“[COUNSEL FOR FATHER]: Sure.
“THE COURT: That he acknowledges. That shouldn’t be a problem.
“[COUNSEL FOR FATHER]: All right. Thank you, Judge.
“THE COURT: Just so he knows that he’s bound by this agreement.
“[COUNSEL FOR MOTHER]: Your Honor, for the record we would withdraw our claim for attorney’s fees and claim for reimbursement of costs.
“THE COURT: Okay.
“[COUNSEL FOR' FATHER]: Thank you, Judge.
“THE COURT: All right. Why don’t you put that into that order or the agreement that she on the record withdrew those requests.
“[COUNSEL FOR FATHER]: All right.
■ “THE COURT: Okay. Thank you all for working it out.”
According to the mother, counsel for the father drafted a final judgment for the trial court, which provided:
“The parties were ordered" to participate in the ‘Both Parents Program’ to facilitate an agreement between them concerning the visitation of the [father] with the minor child. Through participation in the program along with negotiations between the parties’ respective counsels, an agreement was reached. Upon agreement of the parties, the Parenting Plan Agreement attached hereto as Exhibit ‘A’ is incorporated herein by *580 reference. It is further Ordered, Adjudged and Decreed as follows:
“1. The [father] is awarded four weeks of visitation during the minor child’s Spring, Winter and Summer Breaks to be selected by the [father] upon sixty days’ notice to the mother of the dates he intends to exercise his visitation. In the event the [father] is unable to visit the child during visitation for an extended period of time of longer than two hours, then he shall give the mother the first right of refusal to care for the child while he is unavailable.
“2. While the child is with the [father], he is not to take the child with him to any industrial sites.
“3. Transportation of the child is to be arranged by the [father]. The [mother] shall assist the [father] with transportation when possible.
“4. Both parties are to maintain medical insurance coverage for the minor child on their respective health-insurance policies with the [mother] maintaining primary health-insurance coverage for the child. [The father] and [the mother] shall each be responsible for and pay one-half of all uninsured medical and dental expenses incurred for the minor child, including orthodontic, optometric, opthmalogical, prescription medicine or any other medical expenses incurred for the minor child not covered by insurance.
“5. Both parents are to cooperate with each other concerning the child’s social and extracurricular activities. The [mother] is to provide the [father] with at least one-week’s notice when events of this type are scheduled for the child.
“6. The [father] is awarded visitation each year during the Christmas Holiday. [The father] shall have the child for the week preceding Christmas Eve until Christmas Eve by 10:00 p.m.
“7. The [father] is awarded visitation every year on New Year’s Eve and New Years Day until 9:00 p.m. on New Year’s Day.
“8. The Court’s Supplemental Order attached hereto as Exhibit ‘B’t[1]] is incorporated herein by reference and made part of this Order.
“9. The [father] is to pay child support in the sum of $294.00 a month pursuant to Rule 32, Alabama Rules of Judicial Administration.”
The trial court signed the judgment on September 19, 2003, and the judgment was filed in the clerk’s office on September 24, 2003. On October 3, 2003, the mother filed a motion to alter, amend, or vacate the judgment in which she maintained that she never received a copy of the proposed judgment drafted by counsel for the father and that the judgment contained errors regarding Christmas and New Year’s visitation. The mother attempted to have the audiotapes from the hearing transcribed before the trial court ruled on her post-judgment motion, but she was unable to do so because of a local rule that prohibited a court reporter from transcribing the audiotapes unless an appeal had been filed. In a response to the mother’s postjudgment motion, counsel for the father stated that she left a copy of the proposed judgment in the courthouse mailbox of the mother’s counsel. On October 15, 2003, the trial court denied the mother’s postjudgment motion. The mother appealed.
The mother’s sole contention on appeal is that the trial court erred by entering a final judgment that is inconsistent with the settlement agreement reached by the par *581 ties and submitted to the trial court. Specifically, the mother directs this court to the trial court’s award of additional visitation to the father the week before Christmas Day and on New Year’s Eve and New Year’s Day.
In Junkin v. Junkin, 647 So.2d 797 (Ala. Civ.App.1994), this court reversed the judgment of a trial court in which it disregarded an agreement reached between the plaintiff wife and defendant husband concerning attorney fees and costs. The agreement between the parties was read into the record before trial. The trial court then heard testimony regarding the remaining issues between the parties. Thereafter, the trial court entered a judgment inconsistent with the agreement of the parties as to attorney fees and costs.
In Junkin, supra, this court recognized that a trial court is not bound by an agreement of the parties. However, we went on to state in Junkin that a “trial court may adopt or reject such parts of [an] agreement as it deems proper from the situation of the parties as shown by the evidence. Therefore, the question becomes whether there was enough evidence presented to the trial court to support its finding." 647 So.2d at 799 (citation omitted; first emphasis original; second emphasis added).
Like the trial court in Junkin, the trial court in this case entered a judgment that deviated from the settlement agreement reached by the parties. The trial court in this case ordered that the parties participate in mediation; the mediation was a success. The six-page transcript of the proceedings before the trial court indicates that the terms of the settlement agreement were read into the record at the hearing; the trial court was not presented with evidence of any kind in support of the father’s petition for visitation. Given the lack of evidence before the trial court, it is unclear why the trial court deviated from the settlement agreement reached by the parties in mediation and later in open court. As noted by the court in Junkin, compromises and settlements of litigation are favored by the courts of this state. 647 So.2d at 798.
While we recognize that a trial court may adopt or reject parts of a settlement agreement, the trial court’s judgment concerning the award of additional visitation is not supported by the evidence, because there was no evidence presented on that issue. See Junkin, supra. Therefore, the judgment of the trial court is reversed and the cause is remanded for the trial court to enter an order consistent with the settlement agreement reached by the parties or to hold a hearing to allow the parties to present evidence on the issue of visitation.
The mother’s request for an attorney fee on appeal is granted in the amount of $500.
REVERSED AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, THOMPSON, PITTMAN, and MURDOCK, JJ., concur.
YATES, P.J., dissents, without writing.

. Exhibit B concerns notification by a custodial parent of his or her intent to change principal residences, pursuant to the Alabama Parent-Child Relationship Protection Act, § 30-3-150, etseq., Ala.Code 1975.