MOORE, Judge.
Orrin C. Hudson (“the' father”) appeals from a judgment entered- by the Shelby Circuit Court (“the trial court”) addressing his petition to modify his child-support obligation and to terminate his periodic-alimony obligation. The father also appeals from that same judgment to the extent it granted relief based on the counterclaims *864 filed by Clairerencia Hudson (“the mother”). We affirm.
■ Background
On September 27, 2011, the father initiated the underlying action by filing a petition to modify his child-support obligation and to terminate his periodic-alimony- obligation. As grounds for that petition, the father asserted that he had become unable to work due to a disability and that two of the parties’ three children had reached the age of majority. On-December 13, 2011, the mother appeared pro se and answered the father’s petition. On January 25,2012, the mother, through legal counsel,- filed an-amended answer with counterclaims alleging that the father had violated the provisions of earlier judgments by failing to pay child support and periodic alimony, by failing to provide health insurance to cover the parties’ children, by failing to reimburse the mother for uninsured medical expenses for the parties’ children, and by failing to pay all expenses associated with the former marital residence. The mother requested that the trial court enter a judgment establishing the amounts the father owed to the mother and finding him in contempt.
On March 13, 2013, the trial court conducted a final hearing on the claims asserted by the father and the mother; ore tenus evidence was presented at that hearing. On April 2, 2013, the trial court entered its judgment. In its judgment, the trial court, among other things, eliminated the father’s child-support obligation as to the two children who had reached the age of majority, -determined that the father was voluntarily underemployed and imputed an income of $4,000 per month to him, ordered the father to pay $662 per month to support the parties’ minor child, and denied the father’s petition to modify his periodic-alimony obligation of $100 per month to the mother. In the same judgment, the trial court, among other things, awarded the mother $400 in past-due periodic alimony, found the father in contempt for failing to pay the health-care expenses for the parties’ children and ordered him to reimburse the mother $18,185 for those expenses, and found the father in contempt for failing to pay the expenses relating to the former marital residence and ordered the father to pay the mother $107,950 to cover past unpaid household expenses and to pay $850 per month to the mother to cover the mortgage on the former marital residence until the youngest child attained the age of majority.
On May 1, 2013, the father moved the trial court to alter, amend, or vacate .its April 2, 2013, judgment. On June 5, 2013, after a hearing, the trial court denied that motion. The father timely filed his notice of appeal.

Discussion

I. Imputed Income
We first address the father’s argument that the trial court erred in imputing income to him for child-support purposes. The father contends that,' because an administrative law judge determined that he was disabled and awarded him Social Security benefits in the amount of $710 per month,[1] the trial court erred in finding him voluntarily underemployed and in imputing to him an income of $4,000 per month.
The father contends that, under the Full Faith and Credit Clause of the United States' Constitution, U.S. Const.,' Art. IV, § 1, and applicable Social Security regular *865 tions, the trial court was bound by the findings of the Social Security Administration regarding his ability to earn wages. The Full Faith and Credit Clause requires each state to give a judgment entered in judicial proceedings in another state the same effect as the judgment would receive in the state in which it was entered. See Camp v. Kenney, 673 So.2d 436, 438 (Ala.Civ.App.1995). In this case, the evidence indicates that the Social Security Administration, a federal agency, determined that the father was entitled to Supplemental Security income benefits (“SSI benefits”) as of January 2012.[2] The father has failed to, explain how the Full Faith and Credit Clause applies to a determination of a federal agency and how application of that clause foreclosed the trial court from imputing income to him. “Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs-contain discussions of facts and relevant legal authorities that support the party’s position. If they do not, the arguments are waived.” White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008); see also Bishop v. Robinson, 516 So.2d 723, 724 (Ala.Civ.App.1987) (quoting Thoman Eng’g, Inc. v. McDonald, 57 Ala.App. 287, 290, 328 So.2d 293, 294 (Civ.App.1976)) (noting that an appellant should “present his issues ‘with clarity and without ambiguity[1] ” and “fully express his position on the enumerated issues” in the argument section of his brief); accord United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990) (“It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel’s work, create the- ossa-ture for the argument, and put flesh on its bones.”).
.The father also argues that the imputation of income to him will adversely affect his eligibility for Social Security disability benefits.[3] , The father notes that federal regulations mandate a reduction in a recipient’s disability benefits for excess earnings and asserts that the most he can earn without impacting his disability award is $1,039 per month.[4] The father essentially maintains that the trial court could not impute additional monthly income to him above $1,039 without committing reversible error. The father has not presented this court with any legal authority to support the proposition that the .imputation of . income by a state court would actually affect eligibility for federal SSI benefits or reduce the. amount of SSI benefits available to that recipient. More pointedly, the father has not directed this court to any legal -authority, preventing a state court from imputing income to a recipient of SSI benefits in an amount beyond $1,039. Hence, we consider those arguments waived under Rule 28(a)(10). See also Galloway v. Ozark Striping, Inc., 26 So.3d 413, 423. (Ala.Civ.App.2009) (“ ‘It is neither the duty nor the function of an appellate court to perform a party’s legal research.’ ” (quoting Sullivan v. Alfa Mut. Ins. Co., 656 So.2d 1233, 1234 (Ala.Civ.App.1995))).
The father also cursorily argues that the trial court imputed income to him of $4,000 a month “despite his presentation of undisputed evidence of his disability, *866 and a complete lack of evidence regarding earning potential presented by [the mother].”
“In cases of voluntary underemployment, the amount of income to be imputed to the parent is a question of fact to be decided based on the evidence presented to the' trial court. See G.B. v. J.H., [915 So.2d 570 (Ala.Civ.App.2005) ]; see also Clements v. Clements, 990 So.2d 383, 394 (Ala.Civ.App.2007) (quoting Winfrey v. Winfrey, 602 So.2d 904, 905 (Ala.Civ.App.1992)) (‘The trial court is afforded the discretion to impute income to a parent for the purpose of determining child support, and the determination that a parent is voluntarily unemployed or underemployed “is to be made ft’om the facts presented according to the judicial discretion of the trial court.”’). We may reverse a judgment imputing income to a voluntarily underemployed parent that is based on ore tenus evidence only if that judgment is so unsupported by the evidence as to be plainly and palpably wrong. G.B. v. J.H., 915 So.2d at 575.”
Stone v. Stone, 26 So.3d 1228, 1281 (Ala.Civ.App.2009).
The father testified that three doctors had diagnosed him with bipolar disorder, which, although he was in therapy, prevented him from working. The father testified that, in June 2012, he had been awarded Social Security disability benefits retroactive to January 2012 and that he was unemployed. Before that- time, he had worked as the principal officer in Be Someone, a nonprofit corporation dedicated to teaching at-risk youth how to resolve their • problems nonviolently, mainly through applying principles used in playing chess. According to the father, before his , disability; his second wife had primarily paid the couple’s living expenses while he tried to run Be Someone from their home because the organization had not been receiving adequate donations since at least 2008. •
In its judgment, the trial court noted that the father . 1 '
“presents as a currently unsuccessful, self-employed entrepreneur who has fallen on difficult times, and now suffers from debilitating depression and mental stress, which renders him too fragile to be gainfully employed.”
However, the trial court did not accept that portrayal. The trial court described the father as a “voluntary underemployed, self-pitying malingerer.” The trial court stated that, in 2000, it had concluded that the father was voluntarily underemployed and was capable Of earning $4,000 per month and that no material change of circumstances had occurred to alter that determination.'
Prom those statements, as well as the tenor of the overall judgment, it is apparent that, from its direct observations of the father, the trial court concluded that he was not emotionally disabled from working despite any contrary finding qf the. Social Security Administration.[5] Besides observing the father, the trial court heard testimony,. although somewhat disputed, that the father continued to work “sporadically” for Be Someone, that he had authored multiple books, that he had traveled to the Philippines in December 2012 to “help a friend” and that most of his expenses- had been paid, that Be Someone continued to pay his mortgage and utility expenses, and that he still carried two credit cards issued in the name of Be Someone. From, the *867 totality of the evidence, the .trial court could have inferred that, the bipolar disorder did not prevent the father from earning income as he could before the diagnosis. The father’s income-tax records show that he had earned over «$50,000 in 2009 from speaking and self-employment activities, so the trial court was within its discretion to impute to the father a monthly income of «$4,000 even though the father claimed on his CS-41 ehild-support-obli-gation income statement/affidavit that he earned only $500 per month from his employment. We cannot conclude that trial court’s- factual determinations regarding the Mher’s voluntary underemployment are plainly and palpably wrong.
II. (Mld-tiupport Omití
The father next contends that the trial court failed to follow Rule 82, Ala, R. Jud. Admin., when calculating the amount of his child-support obligation. We have already rejected the father’s primary argument that the trial court erred in imputing $4,000 per month in income to the father. We now address the father’s contention that the trial court erred in failing-to adjust the child-support award to account for his other child-support obligations.
The record shows that, besides the parties’ minor child, the father has three other minor children — one son by his second wife and two daughters by a paramour. The father testified that he pays child support of .$250 per month for the two daughters.[6] Rule 32(B)(6), Ala. R. Jud. Admin., provides, in pertinent part:
“The amount of child support actually being paid by a parent pursuant to an order for child support of other children shall be deducted from that parent’s ‘gross income.’ ,.. ‘Other children’ means children who are not the subject of the particular child-support determination being made. If the proceeding is one to modify an existing award of child support, no deduction should be made for other children born or adopted after the initial award of child support was entered, except for child support paid pursuant' to another order of child sup- . port.”
By its plain language, Rule 32(B)(6) requires a court in a ehild-support-modifxcation proceeding to deduct from a parent’s gross income amounts paid for children other than the child or children at issue made pursuant to other existing child-support orders.
In this case, the evidence indicates that the father is paying child support of $250 peí' month for his two daughters, but the father did not present any evidence indicating that he is doing so pursuant to any court orders. In the absence of such evidence, we cannot place the trial court in error for failing to credit the monthly $250 child-support payment when calculating-the child support due for the parties’ minor child.
. III. Periodic, Alimony
We next address the father’s argument that the trial court erred when it refused to terminate his obligation to pay *868 periodic alimony to the mother. The father argues that he is unable to meet his periodic-alimony obligation because, he says, he has no income and no financial means with which to support the mother.
“The obligation to pay periodic alimony may be modified when there has been a material change in the financial or economic needs of the payee spouse and the ability of the payor spouse to respond to those needs.” McKenzie v. McKenzie, 568 So.2d 819, 820-21 (Ala.Civ.App.1990). The burden of proving the existence of a material change in circumstances is upon the moving party. Boudreaux v. Boudreaux, 550 So.2d 1030, 1031 (Ala.Civ.App.1989). The decision to modify periodic alimony lies within the discretion of the trial court and will not be set aside on appeal unless a palpable abuse of that discretion is shown. Thomas v. Thomas, 532 So.2d 1043, 1044 (Ala.Civ.App.1988).
' In this case, the mother testified that she continues to rely on the $100' per month in periodic alimony originally ordered by the trial court in order to meet her financial needs. The father claims he has lost the ability to pay $100 per month to the mother because of his emotional disability; however, the trial court specifi- " cally rejected that claim, as set out above. The trial court concluded that the father retains the ability to earn sufficient income to continue to pay the mother periodic alimony. See Cox v. Cox, 485 So.2d 767, 768 (Ala.Civ.App.1986) (“[I]n periodic alimony modification cases the law is concerned with one’s ability to earn, as opposed to actual earnings, in determining whether periodic alimony should, be terminated, increased, or reduced.”). We cannot conclude that the trial court’s determination is plainly and palpably wrong. See Murphy v. Murphy, 470 So.2d 1297 (Ala.Civ.App.1985).
IV. Jurisdiction Over Counterclaims
We next address the father’s argument that the trial court failed to acquire jurisdiction over the mother’s .counterclaims because she failed to pay the filing fee required by Ala.Code 1975, § 12-19-71(a). The mother apparently failed to pay a filing fee when she filed her counterclaims on January 25, 2012. On June 12, 2012, the trial court ordered the mother to pay the necessary fee by June 15, 2012, or, it indicated, her counterclaims would be dismissed. Although the record does not affirmatively establish that the mother paid the required fee in response to that order, on June 19, 2012, the trial court scheduled the mother’s counterclaims, along with the father’s claims, for a final hearing. The record contains no further mention of the filing fee.
Alabama Code 1975, § 12-19-71 (a)(7), provides that “[t]he filing fees which shall be collected in civil cases shall be-... [t]wo hundred, forty-eight dollars ($248) for cases filed in the domestic relations docket of the circuit court seeking to modify or enforce an existing domestic relations court order.”[7] In Espinoza v. Rudolph, 46 So.3d 403 (Ala.2010), our supreme court addressed the requirement that a counterclaim plaintiff pay a filing fee in support of a counterclaim, pursuant to § 12-19-71(a). The supreme court recognized:
“Although § 12-19-70 expressly requires that the docket fee must be ‘collected from [the] plaintiff at the time [the] complaint is filed,’ ... the legislature has not expressly provided that a *869 filing fee must be collected at -the time á counterclaim is filed;.. Therefore, when Rudolph delivered the counterclaim to the clerk, the counterclaim was ‘filed’ and became a part of the action over which the trial court had- jurisdiction ....
“Therefore, the trial court' did not err by reinstating Rudolph’s- counterclaims on the condition that she pay the filing fee.” "
46 So.3d at 414. After concluding that a counterclaim plaintiff was not required to pay the filing fee at the time the counterclaim was filed to vest the trial court with jurisdiction over that counterclaim, our supreme court added:
“We note that, when the requirements of § 12-19-71 have not been satisfied, the trial court may stay the time for answering the counterclaim or conducting discovery or litigating the counterclaim until the fee is paid or may make such other orders as,are reasonable and necessary to ensure payment. Consequently, a counterclaim defendant is not without incentive. to, take note. of, and timely object to, the .nonpayment, of the filing fee.”
46 So.3d at 414 n. 12 (emphasis added).
We read Espinoza as holding that the failure to pay a filing fee does not divest the trial court of jurisdiction over a counterclaim. A trial court may, in its discretion, stay any proceedings on a counterclaim in order to ensure payment of the filing fee, and a counterclaim defendant may move the trial court to do so. However, a trial court does not act without jurisdiction if it fails to, take' such steps before adjudicating a counterclaim, even upon a motion of a counterclaim defendant.
In this casé, the father did not move the trial court to stay the proceedings on the counterclaims filed-by the mother until she paid a filing fee. In fact, the father -did not even mention the nonpayment of the filing fee to the trial court, raising the issue for the first time on appeal. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (“This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.”); and Gotlieb v. Collat, 567 So.2d 1302, 1304 (Ala.1990) (“This Court cannot put a trial court in error for failing to consider evidence or accept arguments that, according to the record, were not presented to it.”). The father is not allowed to raise that nonjurisdictional issue in this court only after receiving an adverse judgment below. See Hicks v. Hicks, 130 So.3d 184, 194 (Ala.Civ.App.2012) (Thompson, P.J., dissenting), cert. denied, 130 So.3d 194 (Ala.2013). Therefore, we reject any contention that the trial court acted without jurisdiction in ruling on the mother’s counterclaims.
V. Counterclaims Regarding the Mortgage
The..father next argues that any obligation he had to pay the mortgage on -the former marital residence had been discharged in a bankruptcy proceeding and that the trial court therefore erred in holding him in contempt for failing to pay the mortgage and in ordering him to pay the mother any mortgage amounts.
We note, however, ’that the father did not present the trial court with a copy of any bankruptcy orders purportedly discharging his obligation to pay the mortgage. The record contains only an electronic listing-of the pleadings filed and a general description of the orders and judgments entered in the father’s bankruptcy action.[8] As a result, the record contains *870 no evidence showing .what treatment, if any, the. bankruptcy court afforded .the father’s obligation to maintain the former marital residence .for. the benefit of the mother and the children. The father, as the appellant, bore the burden of providing a record sufficient to establish the errors of which he complains, and his failure to bear that burden prevents any further consideration of this issue. See Newman v. State, 623 So.2d. 1171 (Ala.Civ.App.1998) (denying father’s habeas corpus petition seeking release from incarceration on a criminal-contempt finding; father asserted that his recently filed bankruptcy petition established his defense of inability to pay; however, the appellate court refused to consider that argument when the record lacked a copy of the father’s bankruptcy petition)..
The father also summarily argues that the trial court erred in ordering him to pay the mother $850 per month until the parties’ minor child reaches the age of majority. The mother testified that her mother and father purchased the marital residence in a foreclosure sale after the father quit paying the mortgage. The mother- stated that the current mortgage on the residence was payable in installments of $850 per month, which she .was paying as rent to her parents when she could afford it. In a two-sentence paragraph, the father asserts that the order to pay $850 per month must be considered as additional child support or additional alimony and should be disallowed. The father, however, has failed to develop this argument, and he fails to cite any authority in support thereof, so we do not consider it. See Rule 28(a)(10), Ala. R.App. P.[9]
VI, Inability to Pay
The father next argues that' the trial court erred in finding him in contempt for failing to pay his monetary obligations in regard to the mother and the parties’ children because, he says, he proved he lacked the ability to pay those amounts. See, e.g,, Carr v. Broyles, 652 So.2d 299, 301-02 (Ala.Civ.App.1994) (recognizing that an obligor’s inability to pay is a complete defense to a charge of contempt and discussing the shifting burdens of proof in establishing contempt). The trial court, however, found in 2000 and again in the judgment now before this court on appeal that the father was voluntarily underemployed and that he was capable of earning at least $4,000 per month. As discussed earlier, we have affirmed that aspect of the judgment, and we note now that the father failed to establish that his expenses ever exceeded $48,000 annually so as to prevent him from complying with the trial court’s judgment. Because of that finding, the father did not establish an inability to pay, and, as a result, the burden never shifted to the mother to rebut that showing. Carr v. Broyles, supra. Thus, the trial court was within its discretion in rejecting inability to pay as a defense to the contempt charges asserted against the father.
VII. 'Attorney's Fees
Finally, the father argues that the trial court erred in ordering him to pay *871 $7,650 to the mother for attorney’s fees incurred in connection with her contempt counterclaims. Alabama Code 1975, § 30-2-54, authorizes a trial court to award attorney’s fees in a domestic-relations action when a finding of contempt has been made. Additionally, it is well settled that
“[wjhether to award an attorney fee in a domestic relations’ ease is'within the' sound discretion of the'trial court and, Absent an abusé of that, discretion, its ruling on that question will t not be reversed. Thompson v. Thompson, 650 So.2d 928 (Ala.Civ.App.1094). ‘Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties’ conduct, the results of the litigation, and, where appropriate, the trial court’s knowledge and experience as to the value of the services performed by the attorney.’ Figures v. Figures, 624 So.2d 188, 191 (Ala.Civ.App.1098). Additionally, a trial court is presumed to have knowledge from which it may set a reasonable attorney fee even when there is no evidence as to the reasonableness of the attorney fee.. Taylor v. Taylor, 486 So.2d 1294 (Ala.Civ.App.1086).”
Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App.1996).
The father argues that the mother’s lawyer failed to testify as to the fees she was seeking and that no evidence' was presented to establish the reasonableness of those fees. The trial court, however, found the father to be in contempt. Pursuant to § 80-2-54, that finding authorized the trial court to make an award of attorney’s fees. Additionally, at the final hearing, the mother’s lawyer - submitted an itemized statement of her time to the trial- court, indicating that that statement did' not reflect the: total amount of 'time she had-invested on behalf of the mother.- Because the trial court is presumed to have knowledge as to the reasonableness of attorney’s fees and because.it had sufficient information before it on which to base an award of fees, we cannot conclude that it exceeded its discretion'm ordering the father to pay the mother’s attorney’s fees.

Cond/mim

Because the father has failed to identity reversible error in .the trial court’s, judgment, . we ? affirm that judgment. The. mother’s request for .the'award of-attorney's fees on appeal is denied.:/, ■ : i
AFFIRMED. <r
PITTMAN, THOMAS, and DONALDSON, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.

. The father reported on his CS-41 child-support-obligation income statement/affidavit, see Rule 32, Ala. R. Jud. Admin., that his monthly Social Security benefits were $710, but, according to the Social Security Administration Notice of Award admitted at the final hearing, the father receives $698 per month in benefits.

. The father frames his argument as if he received Social Security disability benefits, which are distinct from, SSI benefits. See Horwitz v. Horwitz, 897 So.2d 337, 342 n. 6 (Ala.Civ.App.2004). That distinction does not affect our disposition, however.

. See supra note 2.

. The father does not substantiate that figure with citation to the record or to any federal regulation of which we can take judicial notice, but, because of our disposition of this issue, we accept that representation as being accurate.

. The record does not contain any document explaining the basis for the award of SSI benefits to the father, but, for the purposes of this opinion, we assume the father was determined to be disabled and in need of supplemental income.

. In his brief to this court, the father states that he pays $279 per month in child support for his son by his second wife; however, he does not cite any part of the record to support that contention. Rule 28(a)(7), Ala. R.App. P., requires an appellant to make appropriate references to the record to support his or her factual statements. An appellate court is under no duty to search the record for evidence to support a factual assertion. See Perdue v. Green, 127 So.3d 343, 400 n. 16 (Ala.2012). This court nevertheless found one reference to a monthly payment the father was making in the amount of $279.50 lo his second wife, but the father did not describe that payment as child support. Hence, we do not consider any argument that the Father is paying $279 in child support on behalf of his minor son any further.

. The father incorrectly relies on Ala.Code • 1975, § 12 — 19—71 (a)(8), which addresses the filing fee required to support a counterclaim "filed in a civil action of the circuit court other than cases filed on the domestic relations docket of the circuit court.” (Emphasis added.)

. We also note that the father’s attorney informed the trial court at the outset of the trial *870 that tlie father had not listed his divorce-judgment obligation to pay the mortgage in his bankruptcy filings, and his attorney further acknowledged that the mother- would not have had any notice of an attempt to discharge that obligation.

. Although he has not listed it as an issue in his Statement of Issues, the father also summarily argues at the end of his brief to this court that the trial court erred in awarding the mother $18,185 for unpaid health-care expenses for the children, contending the trial court did not have sufficient evidence to award that amount, We do not address that issue due to the father's noncomplianee with Rule 28(a)(10).