THOMPSON, Presiding Judge.
 

 Vernon Monroe Hull (“the husband”) appeals from the judgment of the Baldwin Circuit Court holding him in contempt and awarding Rosalynde Johnson Hull (“the wife”) $534,415.50 from the proceeds of the sale of a parcel of property he owned. The wife cross-appeals. For the reasons stated herein, we affirm in part and reverse in part as to the husband’s appeal; we affirm as to the wife’s cross-appeal.
 

 This is the third time these parties have been before this court. In
 
 Hull v. Hull,
 
 887 So.2d 904 (Ala.Civ.App.2003), the parties’ first appearance before this court, this court provided the following factual history:
 

 “Rosalynde Johnson Hull (‘the wife’) and Vernon [Monroe] Hull (‘the husband’) were married in 1980. This was a second marriage for both parties and, although both had children from prior marriages, they had no children of their own. In November 2001, the wife sought a divorce....
 

 [[Image here]]
 

 
 *818
 
 “The husband, who was 73 years old at the time of trial, is a retired electrical engineer who operated his own consulting business for 11 of the 12 years preceding the divorce trial and who has worked in the cellular-telephone industry. He has not held a job since November 2001. The wife, who was 59 years old at the time of trial, works for the Baldwin County Board of Education in the Child Nutrition Department. She has worked in that position for 12 years; her annual salary at the time of trial was $34,500.
 

 [[Image here]]
 

 “The parties purchased a house situated on 25 acres in Loxley, Alabama, in 1988 for $128,000. This house became the marital residence. The husband paid the $40,000 down payment on the house with funds he received from a sale of his former business. The note evidenced by a mortgage on the house has been satisfied. Both parties’ names appear on the deed. The wife spent approximately $10,000 of her inheritance on a remodeling of the home’s kitchen. The parties also spent an additional $39,000 on other improvements to the property.
 

 “The husband purchased two other parcels of real estate during the marriage; both are deeded solely in his name. The first parcel is a 15.7-acre parcel of farmland, which was purchased in 1989 for $28,000....
 

 “The other parcel purchased during the marriage was a 67-acre parcel, part of which is used for the parties’ blueberry farming operation. The husband purchased the 67-acre parcel in 1991 for $70,000; he paid the down payment of $15,000. The husband made $54,000 in improvements to this parcel. The trial court valued this parcel at $266,000. The 67-acre parcel, like the marital residence, is unencumbered....
 

 [[Image here]]
 

 “The trial court awarded the husband the marital residence and ordered that, unless one of the parties chose to buy the other out, the two other parcels of real estate should be sold and any profit realized divided equally between the parties. In addition, in regard to the possibility that the 15.7-acre parcel would sell for less than the mortgage payoff amount, the trial court ordered that the parties would be equally liable ■for any amount due to the mortgage company after the sale.”
 

 Hull,
 
 887 So.2d at 905-07. The wife appealed the trial court’s judgment. Concluding that “the property division in this case [was] so unsupported by the evidence as to be plainly and palpably wrong,”
 
 id.
 
 at 909, this court reversed the trial court’s judgment as to the property division and remanded the cause.
 

 Following remand, the trial court held additional proceedings and entered a final judgment (“the 2006 judgment”) from which the wife appealed. During the appellate proceedings, the parties engaged in appellate mediation and, on November 9, 2006, reached a settlement agreement (“the mediation agreement”). That agreement provided as follows:
 

 “1. Except as specifically modified herein, the ‘Final Order’ entered by the Court on the 14th day of June, 2006, shall remain in full force and effect.
 

 “2. The [husband] shall pay to the [wife] the sum of $65,000.00, in certified funds, on or before the first day of January, 2007, contingent upon Am-South Bank honoring the [husband]’s established Line of Credit.... The parties verified at the Appellate Mediation via telephone conference with
 
 *819
 
 AmSouth Bank in Birmingham that the sum of $83,384.83, was available, and the [husband] having made his last payment thereon on November 6, 2006. Said $65,000.00 includes the $30,000.00 awarded to the [wife] in Paragraph Three of the Court’s ‘Final Order’ dated June 14, 2006.
 

 “3. Upon the advent of the sale of the [67-acre] blueberry farm, the [husband] shall pay to the [wife] the sum of $30,000.00 in certified funds, over and above the one-half of the net proceeds from the sale of the blueberry farm therein awarded to her in the trial court’s ‘Final Order,’ Paragraph Three. As such, the total amount paid to the [wife] over and above the one-half of the net proceeds from the sale of the blueberry farm will be a total of $95,000.00.
 

 “4. Counsel for the [wife] and the [husband] will agree on a disposition of the blueberry farm which is a) fastest, and b) maximizes the amount of money received for each party hereto, and shall thereafter, with all deliberate speed, work together to actualize the sale of the property and disbursement of funds to the parties.”
 

 The final numbered paragraph of the mediation agreement provided that the wife was entitled to certain items of personal property that remained at the parties’ former residence in Loxley (“the marital residence”)
 
 [1]
 
 and that the parties would agree on a date and time for the husband to return those items to the wife. The wife’s appeal was dismissed, and the trial court entered the mediation agreement into the record.
 

 Shortly after the appellate mediation, the parties’ attorneys set up a meeting for late December 2006 with an auction company to discuss selling the 67-acre blueberry farm (“the blueberry farm”) at auction. However, before that meeting was held, the husband, without the wife’s consent, hired a real-estate agent to list the blueberry farm for sale. Following conversations between the parties’ attorneys, the blueberry farm was taken off the market and the parties’ attorneys continued to pursue having the blueberry farm sold at auction.
 

 The parties’ attorneys held a meeting with Frank Crane, a representative of the auction company, on December 28, 2006. The wife attended that meeting; the husband did not. At the meeting, Crane presented a proposal for marketing and auctioning the blueberry farm. Crane indicated that the total cost to the parties for marketing and auctioning the property would be $14,000, a figure that he later reduced to $9,000 after scaling back the marketing plan. Crane’s proposal was to auction the blueberry farm in March 2007, following the marketing of the property.
 

 Before the blueberry farm was auctioned, the husband indicated that he did not want the auction to proceed. In a letter dated April 9, 2007, that the husband sent to the wife’s attorney, the husband wrote that he was assuming control of the sale of the blueberry farm because the attorneys had not accomplished the sale. He indicated that he did not intend to work with either of the attorneys in accomplishing the sale of the blueberry farm and that he was going to hire a real-estate agent. Shortly thereafter, the husband’s
 
 *820
 
 attorney withdrew from representing the husband. The husband hired a real-estate agent who placed the blueberry farm on the market in April 2007 for $1,115,000. After six months, the blueberry farm had not been sold and the price was reduced to $999,000.
 

 On September 26, 2007, the wife filed a petition for a rule nisi and a motion to hold the husband in contempt. She alleged that the husband had failed to pay the $65,000 called for in the mediation agreement despite the fact that the parties had confirmed at the mediation that that amount was available to the husband through the line of credit noted in the mediation agreement. She also alleged that he had failed to return to her the items of personal property the mediation agreement required him to return to her. On December 17, 2007, the wife amended her petition and motion by asserting, in addition to her previous allegations, that the mediation agreement had placed on the parties’ attorneys the obligation to sell the blueberry farm but that the husband, in violation of the mediation agreement, had seized control of that process.
 

 On December 28, 2007, the husband, acting pro se, filed an answer in which he asserted that his obligation to pay the wife $65,000 by January 1, 2007, was contingent upon AmSouth Bank’s approval of a loan to him in that amount but that AmSouth Bank had refused to approve any such loan to him. He asserted that he had corresponded with the wife about making arrangements to pick up certain of the larger items of personal property that she was awarded but that remained at the blueberry farm or at the marital residence and that, as a result, he should not be held in contempt for failure to return her items. He indicated that he had moved some of the items awarded to the wife to a processing shed at the blueberry farm, that he had moved one of the automobiles awarded to the wife to the blueberry farm, and that he had mailed to her, during the week preceding the filing of his answer, a key to the processing shed and a key to the automobile. He indicated that the other automobile awarded to her was also at the blueberry farm and that it was also available for her to pick up.
 

 On March 18, 2008, a company known as Tikkun Properties, Inc. (“Tikkun”), offered to purchase both the blueberry farm and the marital residence for a lump sum of $1,088,000. The husband and his real-estate agent responded to that offer with a counteroffer of $1,219,300. That amount was based on $529,300 for the 25-acre marital residence and $690,000 for the 67-acre blueberry farm. The husband and his real-estate agent arrived at those prices by valuing the acreage of both properties at $12,500 per bare acre, $14,000 per acre on which fruit was planted, and $5,000 per wet acre; by valuing the marital home at $80 per square foot; and by valuing the four outbuildings at the marital residence at $50,000. Tikkun responded with a counteroffer to purchase both properties for $1,180,000, which the husband accepted. The husband and Tikkun valued the marital residence at $500,000 and the blueberry farm at $680,000. Tikkun’s purchase of the marital residence included all the structures located thereon, including a “hobby house” that the trial court had awarded to the wife in the 2006 judgment.
 

 As part of the closing costs, the husband’s and Tikkun’s real-estate agents received a commission equal to 10% of the price of the blueberry farm, or $68,000. In addition to the commission, other items paid as closing costs that are pertinent to this appeal included $2,650 for a wetland survey performed on the blueberry farm at the husband’s direction and $8,220.69 to pay off the line of credit the husband had
 
 *821
 
 obtained, and which had been discussed in the mediation agreement. On May 12, 2008, the trial court entered an order requiring that all proceeds from the sale of the blueberry farm and the marital residence be deposited with the Baldwin Circuit Clerk in an interest-bearing account.
 

 The trial court held a trial over five nonconsecutive days beginning in June 2008. Following the conclusion of testimony, the trial court entered an order indicating that the parties were to submit proposals for a final judgment. Apparently both parties did so, but the proposals are not contained in the record. On December 9, 2008, the trial court entered a final judgment that provided, in pertinent part, as follows:
 

 “1. That the [husband] is in contempt of court for his failure to abide by the order entered as a result of the parties’ agreement in 2006 via appellate mediation.
 

 “2. That said contempt is partly due to his failure to pay the $65,000.00 amount by the agreed-upon deadline set by the parties and adopted as the court’s order. Said monies shall be released from the fund presently held by the Circuit Clerk of Baldwin County to [the wife]. Additionally, interest in the amount of $14,617.08 is due and payable regarding said payment, and shall be awarded payable to [the wife] from said fund as well.
 

 “8. That the additional $80,000.00 due to [the wife] pursuant to the terms of the appellate agreement that the court adopted as its order shall be payable to her from said fund.
 

 “4. That said contempt is also due to his failure to participate in actions undertaken in December 2006 through March 2007 regarding an auction of the properties in question, and that the following monies spent by the [husband] in his unauthorized sale of the properties shall be credited to the [wife]:
 

 “a. The commission fee of $68,000.00 paid to the realtor, less the $7000.00
 
 [2]
 
 it would have cost the [wife] to market and sell the properties at auction in early 2007 ($61,-000.00);
 

 “b. The cost of the wetlands survey ($2650.00).
 

 “5. In utilizing the numbers provided by the [husband] in his closing argument/brief regarding the division of the proceeds of the blueberry farm, the [wife] would therefore be entitled to the $303,919.50, plus the $61,000.00, plus the $2650, totaling $367,569.50, which shall be paid to [the wife] from the fund held by the Circuit Clerk.
 

 “6. That the [husband] is also in contempt of court for the sale of the ‘hobby house’ in the sale of the home-place, and that $12,000.00 shall be payable to [the wife] through the fund held at the Circuit Clerk’s office to purge him of said contempt.
 

 “7. That the [husband] is further in contempt of court for his failure to maintain the personal items awarded to the [wife] through the pendency of these proceedings, and for his disal-lowance of the [wife] and/or her agents to have access to the same, and she shall be awarded the amount of $20,986.00 as replacement value of the same, to be paid from the fund in the possession of the Clerk of Court.
 

 
 *822
 
 “8. That as a result of the [husband]’s contemptuous behavior following the entry of the court’s order adopting the appellate mediation agreement, the [wife] has incurred attorney’s fees and expenses in the amount of $17,799.62, to [be] paid to [the wife] from the fund in the possession of the Clerk of Court.
 

 “9. Said monetary awards due to the [wife] as a result of the [husband]’s contemptuous behavior total $527,972.20, as the court wishes to save the Clerk’s staff the burden of said mathematical computation, as well as the question of whether it is to be issued as one check or many. The Clerk shall issue a check in the amount of $527,972.20 to [the wife] immediately.
 

 “10. That the parties owe Tikkun Properties $30,661.35, which is undisputed, and that amount shall immediately be paid by the Clerk’s Office to said entity-
 

 “11. That the remainder of the monies deposited in the Clerk’s trust account shall be disbursed to the [husband] immediately, and said amount should total $539,931.49.
 

 “12. That any requests made by the parties in the course of this litigation not herein addressed are hereby DENIED.
 

 “13. That any parts of the court’s prior order(s) not addressed in this litigation shall remain the same.”
 

 The wife filed a motion to alter, amend, or vacate the judgment, in which she contended, among other things, that the trial court had improperly awarded to the husband all the interest on the funds deposited with the circuit clerk. On March 6, 2008, the trial court granted the wife’s motion in part. It held that the final judgment incorrectly ordered that all the interest on the funds deposited with the circuit clerk, $13,032.56, be disbursed to the husband. It found that, because the wife had received 49.44% of the total proceeds deposited with the circuit clerk, she was entitled to that same percentage of the interest that had accrued on those proceeds. Thus, it ordered the husband to pay the wife an amount equal to that percentage of the interest, or $6,443.30. It denied the wife’s motion in all other respects. The husband filed a timely appeal to this court. The wife filed a timely cross-appeal.
 

 In
 
 S.A.T. v. E.D.,
 
 972 So.2d 804 (Ala.Civ. App.2007), this court described the standard by which it reviews a contempt judgment:
 

 “The standard of review of a judgment of contempt is as follows:
 

 “ ‘ “[Wjhether a party is in contempt of court is a determination committed to the sound discretion of the trial court, and, absent an abuse of that discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, this court will affirm.” ’
 

 “Nave v. Nave,
 
 942 So.2d 372, 377 (Ala. Civ.App.2005) (quoting
 
 Stack v. Stack,
 
 646 So.2d 51, 56 (Ala.Civ.App.1994)). Furthermore,
 

 “ ‘ “
 
 ‘[i]n ore tenus proceedings, the trial court is the sole judge of the facts and of the credibility of the witnesses, and it should accept only that testimony which it considers worthy of belief.’
 
 Clemons v. Clemons,
 
 627 So.2d 431, 434 (Ala.Civ.App.1993).” ’
 

 “Gladden v. Gladden,
 
 942 So.2d 362, 369 (Ala.Civ.App.2005) (quoting
 
 Ex parte RE.C.,
 
 899 So.2d 272, 279 (Ala.2004)).”
 

 972 So.2d at 809. Moreover, “[w]here evidence is presented to the trial court
 
 ore tenus,
 
 a presumption of correctness exists
 
 *823
 
 as to the court’s conclusions on issues of fact; its determination will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.”
 
 American Petroleum Equip. & Constr., Inc. v. Fancher,
 
 708 So.2d 129, 132 (Ala.1997).
 

 The husband contends that the trial court erred when it held him in contempt for failing to pay the wife $65,000 as called for by the mediation agreement. He argues that the trial court disregarded the fact that, pursuant to the mediation agreement, the husband’s obligation to pay the wife $65,000 by January 1, 2007, was “contingent upon AmSouth Bank honoring [his] established line of credit.” However, evidence at trial indicated that, had the husband sought to draw on his established line of credit, funds in the amount of $65,000 would have been available to him at all times. Specifically, a representative of the bank at which the husband had had the line of credit testified that, between October 2006 and March 2008, the husband had at least $83,307.34 available to him at all times on his line of credit and that there was no hindrance to his accessing those funds. As a result, the evidence supports the trial court’s determination that the husband violated the mediation agreement in this regard.
 

 The husband also argues that the trial court erred when it awarded the wife the cost of the real-estate commission charged by Tikkun’s and the husband’s real-estate agents, less the cost that would have been incurred by the wife had the parties sold the property at auction. The husband argues that the requirement in the mediation agreement that the blueberry farm should be sold quickly in a manner that maximized its price justified his taking unilateral control of the sale of the blueberry farm after the parties’ attorneys had delayed several months in attempting to sell the blueberry farm. He argues that the mediation agreement did not require that an auction be utilized as the means of selling the blueberry farm, and he argues that whether the blueberry farm would have sold at an auction was speculative. We disagree.
 

 The mediation agreement was clear that it was the parties’ attorneys, and not the parties themselves, who were to control the sale of the blueberry farm. The record does not indicate that the attorneys delayed in attempting to achieve a sale of the blueberry farm; instead, the record reveals that, had the husband not objected, the blueberry farm would have been auctioned in March or April 2007. Because the husband violated the mediation agreement by taking control of the process of selling the blueberry farm and placing it with a real-estate agent for sale, the parties were charged $68,000 as the real-estate agents’ commission for the sale of the blueberry farm, a charge they otherwise would not have incurred had the blueberry farm been auctioned as the parties’ attorneys had agreed. We see no error in the trial court’s requiring the husband to shoulder the cost incurred from the sale by the parties because of the husband’s refusal to dispose of the blueberry farm in the manner agreed to by his and the wife’s attorneys.
 
 [3]
 

 For the same reason, we also find the husband’s next contention to be without merit. The husband argues that the trial court erred when it awarded $2,650 to the wife for the cost of the wetland survey that
 
 *824
 
 was paid out of the proceeds of the sale of the blueberry farm. The husband argues that his real-estate agent obtained the wetland survey without any authorization from the husband, and he argues that the wetland survey benefited both parties. However, the husband’s real-estate agent testified that the survey was performed at the direction of the husband. Moreover, it is undisputed that Tikkun did not require the wetland survey as a condition of purchasing the blueberry farm. Thus, the trial court was justified in concluding that the cost of the wetland survey was incurred as a result of the husband’s improper exercise of sole control over the sale of the blueberry farm, and the trial court did not err in requiring him to bear the cost of that survey alone.
 

 The husband next contends that the trial court erred by crediting the wife $12,000 for the hobby house that she had been awarded as part of the 2006 judgment but that the husband had sold with the two properties to Tikkun. He argues that the wife admitted, in an attachment to the 2006 judgment, that she valued the hobby house at $2,000 but that she claimed in the present trial that the hobby house was worth $15,000. The husband argues that the trial court should not have awarded the wife $12,000 for the hobby house “when she had previously taken a legal position that the value was $2,000.”
 

 The husband fails to cite any legal authority in support of his argument that the trial court should not have allowed the wife to take inconsistent positions on the value of the hobby house. Such failure constitutes a violation of Rule 28(a)(10), Ala. R.App. P., and forms a basis on which this court can reject the husband’s contention.
 
 See Asam v. Devereaux,
 
 686 So.2d 1222, 1224 (Ala.Civ.App.1996) (“This court will address only those issues ... for which supporting authority has been cited.”). Moreover, the wife testified at trial, without objection, that, in selling the hobby house with the two properties, the husband himself had valued the hobby house at between $12,000 and $15,000 in arriving at the sale price of the two properties. Because the wife’s testimony supports the trial court’s valuation of the hobby house, the husband’s contention does not provide a basis on which to reverse the trial court’s judgment.
 

 The husband next argues that the trial court erred by holding him in contempt for failing to maintain certain personal items awarded to the wife and for refusing to allow her access to those items and by awarding her $20,986 as the replacement value for those items. He argues that he made her personal property available to her but that she chose not retrieve it.
 

 The evidence supports the trial court’s conclusion that the husband refused to make the wife’s personal property available to her for retrieval. The wife testified at trial that both the 2006 judgment and the mediation agreement awarded certain items of personal property to her and that she had attempted to retrieve those items from the husband but that the husband had prevented her from doing so. She testified that the husband would not return her calls seeking the return of those items and that he had set up “rules” for how she was to obtain her items, which he then changed. She testified:
 

 “And he vacillated between his first requirement that I would pick up the horse and then the gray van, or he might say that I had to pick up the gray van and then the horse. And then when I got those two, then he would let me get the white van. And only after those three were picked up would he think about letting me get my other stuff.”
 

 
 *825
 
 In addition, the husband, himself, testified that the reason the wife could not pick up her personal items was because he would not tell her where they were. Given such circumstances, we conclude that the trial court did not err in finding that the husband had acted in contempt in refusing to turn over to the wife the personal property that had been awarded to her in the 2006 judgment and the mediation agreement.
 

 With regard to the amount the trial court awarded the wife as “replacement value” for those items, however, we agree with the husband that the evidence does not support the trial court’s judgment. Simply put, there is no evidence indicating the value of any of the items awarded to, but not returned to, the wife. As a result, the trial court’s award to the wife of the “replacement value” of the items previously awarded to her is not supported by the evidence and is due to be reversed.
 

 Finally, the husband contends that the trial court improperly allowed the wife, over his objection, to testify that, in her opinion, the husband had acted in contempt. He argues that, in so doing, the wife offered testimony in the form of an opinion that embraced the ultimate issue of the case in violation of Rule 704, Ala. R. Evid.
 

 The husband’s contention is based on the following exchange at trial:
 

 “Q. [By the wife’s attorney:] Has [the husband] acted in a contemptuous manner?
 

 “A. At the time I saw him face to face he was very contentious.
 

 “Q. No. Has he acted with contempt?
 

 “A. Contempt, absolutely.
 

 “[Attorney for the Husband]: I am going to object. Contempt is a legal term. It calls for Your Honor to determine, not her.
 

 “THE COURT: Overruled.
 

 “BY [THE WIFE’S ATTORNEY]:
 

 “Q. Has he?
 

 “A. In my opinion he has not done hardly anything he agreed to.
 

 “Q. Are you asking the Court to hold him in contempt?
 

 “A. Yes, sir, I am.”
 

 As is clear from the above-quoted testimony, the husband did not object until after the wife had answered the question that the husband found objectionable. “One cannot preserve error by objecting to a question after the witness has given a responsive answer.”
 
 Crowne Invs., Inc. v. Reid,
 
 740 So.2d 400, 408 (Ala.1999). If the wife’s answer came too quickly for the husband to have objected, the husband’s obligation was to make a belated objection and to move to strike the question and answer.
 
 Id.
 
 This the husband did not do. Thus, he failed to preserve this contention of error for review.
 
 [4]
 

 In her cross-appeal, the wife contends that the trial court erred when it awarded her compensation based on the price obtained from the sale of the blueberry farm in 2008 rather than on what the wife asserts the blueberry farm was worth in early 2007, when the husband interfered with the auctioning of the property. She argues that the evidence at trial demonstrated that, had the husband not interfered with the auction in March 2007,
 
 *826
 
 the 67-acre blueberry farm would have sold for between $15,000 and $18,000 per acre, yielding a net amount of between $996,000 and $1,197,000 after payment of the $9,000 auction fee, rather than the $680,000 for which the husband ultimately sold the blueberry farm.
 

 The wife’s argument as to the value of the blueberry farm in March 2007 is based on an estimate provided by Frank Crane, a representative of the company that the parties’ attorneys had approached about auctioning the property. Crane testified at trial that his estimate was based on the price for which his company had previously auctioned a separate tract of land in the same area. However, during cross-examination by the husband’s attorney, Crane admitted that he never obtained an appraisal of the blueberry farm and that his valuation of the blueberry farm was speculative. Moreover, it is undisputed that the blueberry farm was offered for sale at $1,115,000 beginning in April 2007, and, even though the sale price was subsequently lowered to $999,000, it remained on the market for a year before it sold.
 

 Because Crane’s testimony as to the value of the blueberry farm was not based on a formal appraisal and was admittedly speculative, and, more importantly, because the blueberry farm was placed on the market at the approximate amount Crane believed the property to be worth but could not be sold at that price, we conclude that the trial court was free to reject Crane’s estimate as to the value of the blueberry farm and that it did not err by failing to award the wife an amount equal to half of what Crane had estimated the blueberry farm to be worth.
 

 The wife also argues that the husband attributed an improperly low value to the blueberry farm and an improperly high value to the marital home when he sold both properties together to Tikkun. As previously noted, in preparing a counteroffer to Tikkun’s initial purchase offer of both properties, the husband and his real-estate agent arrived at the price for each property by applying different values to the different types of land composing the two properties and to the structures located on the properties. In so valuing the properties, the husband and his real-estate agent arrived at a value of $690,000 for the blueberry farm and $529,300 for the marital residence. Those prices were reduced to $680,000 and $500,000, respectively, in the ultimate sale. The wife contends that, in March 2008, the marital residence was worth only $430,000 and the blueberry farm was worth $871,000. Thus, she argues, the trial court erred by basing its award to the wife on the $680,000 price at which the husband sold the blueberry farm.
 

 In support of her argument, the wife relies on an appraisal performed by Ginger Smith, a residential real-estate appraiser. At trial, Smith testified that, at arriving at the values of those properties, she relied on prices for which local properties she believed to be similar had been sold. However, with regard to her appraisal of the marital residence, the following exchange occurred during cross-examination by the husband’s attorney:
 

 “Q. The property where the home is located, how many buildings are on that property?
 

 “A. That the home is located on?
 

 “Q. Yes.
 

 “A. Two, that I know of.
 

 “Q. That you know of?
 

 “A. Yes.
 

 “Q. What did your survey consist oí? Did you get out and walk around the length of the property?
 

 “A. Actually no. I did actually get out of my vehicle, but [the husband] was
 
 *827
 
 there and did not allow me access to the property.
 

 “Q. So, this appraisal is from records and just sitting in the driveway?
 

 “A. Pretty much.”
 

 As previously noted, five structures were located on the marital residence, not two.
 

 The trial court was faced with competing valuations of the marital residence and the blueberry farm. In such a circumstance, the trial court was free to choose between the two in arriving at the value of the blueberry farm for purposes of determining a proper award to the wife. Given the presumption of correctness attending a trial court’s determination of disputed factual issues,
 
 see American Petroleum Equipment & Construction,
 
 708 So.2d at 132, we cannot say that the trial court erred when it utilized the $680,000 figure for which the blueberry farm was sold in determining the amount to which the wife was entitled rather than the higher value for which the wife advocates.
 

 The wife next contends that the trial court erred when it allowed the balance of the husband’s line of credit, $8,220.69, to be paid out of the proceeds of the sale of the blueberry farm that the parties divided, rather than solely out of the husband’s portion of those proceeds. As previously noted, the trial court arrived at its ultimate monetary award to the wife by adding $303,919.50 as her portion of the proceeds of the sale of the blueberry farm to the other amounts it awarded to her. Although the trial court appears to have derived the $303,919.50 figure by relying on figures supplied by the husband’s attorney in a posttrial filing, the basis of the husband’s attorney’s figures were not made part of the record. Thus, we have no way to determine how the trial court treated the $8,220.69 that was to be used from the proceeds of the sale of the properties to pay off the balance of the husband’s line of credit.
 

 It is the obligation of the one who seeks the reversal of a trial court’s judgment to demonstrate, from the record, the trial court’s error.
 
 See Walker v. Walker,
 
 990 So.2d 927, 930 (Ala.Civ.App.2008) (“Further, the record contains no evidence to support the allegations made in the appellate brief filed on the husband’s behalf; therefore, we must conclude that the husband’s mother has failed to demonstrate error with regard to this argument.”). Because the record does not demonstrate that the trial court deducted the $8,220.69 from the wife’s half of the proceeds from the sale of the blueberry farm, the wife has failed to demonstrate error on the part of the trial court. As a result, her contention is without merit.
 

 Finally, the wife contends that “in assigning values to the personal property damaged or destroyed by [the husband], the trial court failed to acknowledge that [the husband] still had many items in his possession which [the wife] was awarded.” She asserts that the trial court should have ordered the husband to return to her her grandmother’s sewing cabinet, her father’s antique surveying instrument, and her personal shotgun. Of those three items, the only one about which evidence was presented at trial was the surveying instrument, and, as to that item, there is no evidence indicating whether the husband still possesses that item or whether he failed to maintain it.
 

 Because we are reversing that portion of the trial court’s judgment in which the trial court purported to award money to the wife for the husband’s failure to return or maintain the personal property the trial court had previously awarded to the wife, the husband remains under an obligation to return to the wife all items of personal property the trial court had previously
 
 *828
 
 awarded to the wife. As such, the wife’s present contention does not afford a basis on which to reverse the trial court’s judgment.
 
 [5]
 

 Based on the foregoing, we affirm the trial court’s contempt finding against the husband, the trial court’s award to the wife of the costs of the real-estate commission and the wetlands survey, the trial court’s award of $12,000 to the wife for the husband’s sale of the hobby house, and the trial court’s valuation of the blueberry farm; we reverse the trial court’s award of $20,986 to the wife as the “replacement value” of the personal property awarded to her in the 2006 judgment and the mediation agreement; and we remand the cause for the entry of a judgment consistent with this opinion.
 

 APPEAL-AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 CROSS-APPEAL-AFFIRMED.
 

 PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . Throughout the rest of this opinion, we refer to the house in Loxley and the 25-acre tract of land on which it was situated as "the marital residence.” In addition to the house, there were four other structures located on this tract, including a "hobby house,” a garage with an apartment, a barn, and a shed.
 

 [2]
 

 . The trial court deducted half of the original marketing cost for the auction, rather than half of the subsequently reduced marketing cost for the auction. The wife does not complain of that issue on appeal, however.
 

 [3]
 

 . The husband does not contend that the trial court erred by awarding the wife the entire cost of the commission for the sale of the blueberry farm rather than only the half of the commission attributable to her half of the proceeds from the sale of the blueberry farm.
 

 [4]
 

 . Although it is trae that, after the husband objected, the wife’s attorney again asked if the husband had acted with contempt, the wife answered only that the husband had not done what he had said he would do under the mediation agreement and that she was asking the trial court to hold the husband in contempt; she did not testify that the husband was in contempt of court. Thus, she did not testify to the ultimate issue in the case after the husband’s belated objection.
 

 [5]
 

 . The wife also "requests that she be given a monetary value for other missing items, which the trial court neglected to do.” The wife fails to enumerate those "other missing items,” however, and, as a result, we have no basis on which to determine whether there is any merit to the wife's assertion.